JOHN V. FARWELL *et al.*

*v.*

PEHR W. NILSSON *et al.*

*Filed at Springfield March 31, 1890.*

1.  INSOLVENT DEBTORS—*preference among creditors—how far and in what mode allowable—and of the effect of the act of 1877.*  A debtor in failing circumstances may prefer creditors, by giving to one or more of them judgment notes, by which such creditors are enabled to satisfy their claims out of the debtor's property to the exclusion of other creditors, and by the appropriation of all the debtor's assets.

2.  The right of a debtor to pay one creditor in preference to another, or to turn out property in satisfaction of or to create a lien upon it for the security of a particular debt and to the exclusion of other liabilities, always existed at common law; and this right of preference might be exercised by the debtor, when making a general assignment, prior to the passage of the act of 1877.

3.  The act of 1877 does not purport, by its terms, to regulate or prohibit preferences generally, but only preferences in any assignment,—that is, preferences written in an assignment, or created by such instrument or device, and under such circumstances as authorize them to be read into the assignment and treated as void, as being a part thereof. It is not preference of a creditor itself that the statute condemns, but preference as a feature of a general voluntary assignment.  The act regulates the conduct of assigning, not that of insolvent, debtors.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. LORIN C. COLLINS, Judge, presiding.

The following is a sufficiently full and accurate statement of this case, prepared by the Appellate Court, and the opinion of that court thereon:

"Appellants filed a creditor's bill, in which, after alleging the recovery of a judgment against said appellee Nilsson, and the return of an execution issued thereon, no part satisfied, it is further alleged, that April 5, 1888, and for some time prior to that date, the defendant, Nilsson, was engaged in mercantile business in the city of Chicago, and on that date, and for

a long time prior thereto, but for how long complainants are unable to state, said Nilsson was wholly insolvent and unable to pay his debts; that knowing his said insolvent condition, and that he could no longer continue in business, and would shortly be obliged to yield the control and possession of his property to his creditors, he set about arranging his affairs with that end in view. Knowing that if he made a general assignment for the benefit of all his creditors, in the usual and regular form, he would not be able, legally, to incorporate into such assignment preferences for any of his creditors above the others, and desiring to accomplish substantially the same result, he devised a scheme whereby, fraudulently, to avoid the effect of the Assignment law of this State, and to enable certain of his creditors to secure an unfair and unlawful advantage over the others in the distribution of his property. In pursuance of this scheme, said defendant, well knowing that such preferences were sufficient to exhaust the whole of his assets, and that by such preferences all the other creditors would be deprived of any share in his property, caused judgments to be entered against himself, by confession, in the Superior Court of Cook county, upon the 5th of April, 1888, in favor of the following named defendants, for the amounts set opposite their respective names, to-wit," (setting out the names of the co-defendants, and the amount of the judgment of each;) "that said defendant, Nilsson, caused executions to be issued forthwith upon said judgments, and had the same placed in the hands of the sheriff of Cook county to execute; that under said executions, on the same date, the sheriff levied upon the stock of goods belonging to said defendant, that being all of his property subject to levy, and sold the same under said executions on the 16th and 17th of April, 1888, realizing therefrom $5571.25, which amount was all applied upon said executions, and paid to said execution creditors, respectively, by said sheriff; that said defendant, Nilsson, caused said judgments to be entered, and the said executions to be issued, in

pursuance of a plan to turn over and assign all his property to a small number of his creditors, and fraudulently to exclude and deprive his other creditors of any share in his property, or of any benefit of said assignment; that said confessions of judgment were, in effect, but one act, although carried out in a way intended to avoid the outward appearance of a formal and statutory assignment, and that the same constitute a general assignment for the benefit of all creditors, within the true meaning and intent of the Assignment law of this State; that said preferences in said assignment in favor of said judgment creditors were each of them fraudulent, illegal and void as to your orators and the other *bona fide* creditors of said Nilsson; that said judgments were confessed by said Nilsson while he was, and knew himself to be, wholly and absolutely insolvent, and about to quit business, and that said judgments were fraudulent, illegal and void, as preferences in his said assignment, and constituted a fraud upon the rights of said defendant's *bona fide* creditors.

"The bill waives answer, under oath, and prays that the confession of judgment and execution levies may be declared to be part of one transaction and plan, to constitute, both in law and in fact, an assignment by said Nilsson for the benefit of all creditors, within the true intent and meaning of the laws of this State in that behalf, and that said judgments, executions, and the pretended liens thereof, may be vacated and set aside, and the property covered thereby administered by this court for the equal benefit of all the creditors of said Nilsson; that a receiver may be appointed, and that said defendant may be required to turn over to such receiver all his property, and that the judgment creditors, who are made defendants herein, may each be required to account for and pay over to said receiver all moneys realized by them, respectively, from the transactions above set forth, to be distributed among the creditors of said Nilsson, and that complainants may have general relief.

"Nilsson demurred to the bill, assigning as special ground of demurrer, that it does not appear, from the allegations therein, that he ever intended to make a voluntary assignment for the benefit of all his creditors, or that he performed any act, at or before the entry of said judgments, which would confer jurisdiction on this or any other court to declare the judgments fraudulent and void as against complainants. The court sustained the demurrer and dismissed the bill for want of equity, and complainants bring the record to this court by appeal, and assign the action of the court in sustaining the demurrer as error.

"MORAN, J. : The question presented by this case and argued by counsel is, whether a debtor who is in failing circumstances may prefer creditors by giving to one or more of them judgment notes, by which such creditors are enabled to satisfy their claims out of the debtor's property to the exclusion of other creditors, and by the appropriation of all the debtor's assets. Appellants' contention is based on what is claimed to be the proper construction of the Voluntary Assignment law of this State, known as the act of 1877, and the argument is, that as that act declares that every provision in any assignment providing for the payment of one debt or liability in preference to another shall be void, it effectually inhibits the debtor who is insolvent from paying any creditor what he owes him by turning out or transferring property to him, or by giving him a judgment note which will enable him to subject all the debtor's property to the payment of his debt, to the exclusion of other creditors of such insolvent.

"The right of a debtor to pay one creditor in preference to another, or to turn out property in satisfaction of or to create a lien upon it for the security of a particular debt, in preference to and to the exclusion of other liabilities, always existed at common law. And this right of preference might be exercised by the debtor when making a general assignment, in

this State, prior to the passage of the act of 1877, as has been repeatedly decided by the Supreme Court. The act does not purport, by its terms, to regulate or prohibit preferences generally, but only preferences in any assignment,—that is, preferences written in an assignment, or created by such instrument or device, and under such circumstances, as authorize them to be read into the assignment, and treated as void, as being part thereof. The word 'assignment' had, at the time this statute was adopted, a well defined meaning, understood by all the people, and it has no different meaning in said act. * * * According to the common acceptation of the term, it is a transfer, without compulsion of law, by a debtor, of his property to an assignee, in trust, to apply the same, or the proceeds thereof, to the payment of his debts, and to return the surplus, if any, to the debtor. As to the form and contents of it, it has always been understood, in this State, to be a written deed of conveyance, executed by the assignor, as party of the first part, to the assignee, as party of the second part, reciting the grantor's indebtedness and inability to pay, and conveying his property, real and personal, by apt words of sale and transfer, to the assignee, in trust, to take possession of and sell the same, and to collect the outstanding debts, and out of the proceeds to pay the creditors.

"It was preferences in instruments such as above described that the legislature intended to prohibit. The mere form of the instrument is no doubt immaterial, provided the operation of it is to create a trust in the property conveyed for the benefit of creditors, and if such is the purpose and design of the instrument, then any preference in it, or which, by construction of law, forms a part of it, is in fraud of the statute, and void. The object of the law was to prohibit discrimination by a debtor making a voluntary assignment in favor of particular creditors, and it is not preference of a creditor itself that is condemned, but preference as a feature of such assignment.

4—133 I<small>LL</small>.

"Certain language in the opinion of the court in *Preston* v. *Spaulding*, 120 Ill. 208, is relied on to support the contentions of appellants, that the assignment in which preferences are forbidden is such transfer taken as a whole, whether made up of one or many acts, by which an insolvent debtor divests himself of substantially all his property, and yields control of it to one or more of his creditors. The facts of that case called for no decision which would support counsel's contention in this case. There was there a formal voluntary assignment, and the question was, whether judgments given to favored creditors after the debtors had formed the determination of making such assignment, with the intent of preferring such creditors, were to be treated as part of the assignment. But, aside from the rule that the language of an opinion is to be confined by the facts of the case which the court is considering, it will be found that the learned and discriminating judge who wrote in that case carefully avoided the implication that preferential transfers by an insolvent debtor, not connected in act and intent with an assignment, were forbidden by the law. It is in the opinion stated, in terms, that 'this act does not assume to interfere, in the slightest degree, with the action of a debtor while he retains the dominion of his property. Notwithstanding this act, he may now, as heretofore, in good faith sell his property, mortgage or pledge it to secure a *bona fide* debt, or create a lien upon it by operation of law, as, by confessing a judgment in favor of a *bona fide* creditor.'

"Confessing a judgment in favor of one creditor will create a lien on all the property of the debtor, and to satisfy such judgment may exhaust all the assets of the debtor, and leave him without any property to apply to his other debts. If he may confess judgment in favor of one creditor, why may he not do so in favor of a dozen, and, if such judgments are confessed for debts *bona fide* due, how can the knowledge on the debtor's part that his entire estate will be required to discharge such judgment debts, or his intention to create a preference in favor

of such creditors over others by confessing the judgments, render his act fraudulent? He has done, in good faith, that which the common law always permitted him to do, and what the Supreme Court has said the statute does not assume to interfere with in the slightest degree.

"But it is said that the court declared the act is remedial, and to be liberally construed, so as to suppress the mischief and advance the remedy. True; but the mischief was, *preferences by assigning debtors*, and hence preferences in assignments were forbidden, and the liberal construction was adopted to effectuate the legislative intent, by preventing the assigning debtor from giving preferences by resorting to transfers in other forms, made at the same time with or in contemplation of the assignment itself. Hence the court said, that when the debtor 'reaches the point where he is ready and determines to yield the dominion of his property, *and makes an assignment for the benefit of his creditors*, under the statute, this act declares that the effect of such assignment shall be the surrender and conveyance of all his estate not exempt by law, *to his assignee*, rendering void all preferences, and bringing about the distribution of his whole estate equally among his *bona fide* creditors.' And further speaking of the act: 'No insolvent debtor, having in view the disposition of his estate, can be permitted to defeat its operation by effecting unequal distribution of his estate *by means of an assignment*, and any other shift or artifice under the forms of law.' I italicize words in the foregoing quotation to emphasize the fact that the writer who so happily formulated and so clearly expressed the opinion of the court, had clearly in mind the distinction between an assignment and a transfer of some other form, and clearly recognized the difficulty of treating judgments or conveyances as an assignment, or parts of an assignment, and void if preferential, when no assignment was ever executed or contemplated by the debtor who gave such preferences. The act regulates the conduct of assigning, not of insolvent, debtors. We have no involuntary

assignment law, and we know of no principle of law operative in this State that limits or controls an insolvent debtor in the distribution of his assets, provided they are applied in discharge of *bona fide* debts.

"That the true meaning of this Voluntary Assignment act is here taken by us, is further and clearly shown by the case of *Schroeder* v. *Walsh*, 120 Ill. 402, the opinion in which was written by the same judge who wrote in *Preston* v. *Spaulding*, and was filed on the same day as the opinion in said last mentioned case. There an instruction was given which stated to the jury, that 'if a man finds himself in failing circumstances, he has a right to prefer one creditor to another,—to so dispose of his property that one of his creditors shall receive his pay in full, and another receive nothing; nor is there any presumption of fraud in so doing.' This proposition was assigned as error, and, in approving it, the court said : 'In the absence of any bankrupt law or statute to the contrary, the law is well settled that a debtor in failing circumstances, not seeking the benefit of the general Assignment law, may prefer one creditor to another equally meritorious, if done in good faith. * * * The statute relating to assignments by debtors for the benefit of the creditors, prohibiting preferences in such assignments, has no application to a case of this kind. Notwithstanding that statute, a debtor may pay one creditor in full, either in money or by sale of his property. That act applies only to conveyances of property *to an assignee or trustee in trust*, to convert the same into money for the benefit of creditors of the assignor, which can now only be made under that law.'

"Counsel seeks to avoid the effect of this decision on the ground that the case was at law, and that the jurisdiction to administer the equity of creditors arising on acts done in fraud of the law, is in chancery. But titles made in fraud of the law are void at law as well as in equity. Besides, the act created no new head of equity jurisdiction, and we are at a loss to

know to what head of equity the administration of insolvent estates is to be assigned.

"To give to this act the scope and effect here contended for, would be to far exceed the legislative intent. * * * The act contemplates no such thing as a constructive assignment, and that, before the county court gets jurisdiction, an actual assignment must be made and recorded, as required by the act. It must follow, that before a court of equity has jurisdiction to prevent frauds upon the act, and treat transfers made or liens created as parts of the assignment, there must be the execution of an instrument, in whatever form, which creates a trust for the benefit of creditors. For the court to take the administration of the insolvent's estate, and enforce an equal distribution of it among his creditors, because he has himself distributed it in payment of some and to the exclusion of others, where no trust or assignment for the benefit of creditors is made or intended by him, would be to carry the statute far beyond the line which limits the most liberal construction, and to enter on the domain, forbidden to this court, of judicial legislation.

"The case of *White* v. *Cotzhausen*, 129 U. S. 329, is pressed upon our attention by counsel for appellants, as being a decision of the Supreme Court of the United States which fully sustains the construction of the law for which he contends. It must be admitted that the case cited does support appellants' view, and we shall not attempt to distinguish said case from the one here presented. Much as we respect the conclusions of that learned court, we are, upon questions involving the construction of statutes of our own State, bound by the decisions of our own Supreme Court. If our court had not, as we conceive it has, already made its construction of the Voluntary Assignment act plain, we should nevertheless find great difficulty, as will appear from what we have already said, in assenting to the view taken in *White* v. *Cotzhausen*. It would serve no useful purpose to discuss cases decided by courts of

other States, and cited by counsel in further support of his contention. They are nearly all made in view of peculiar statutes in the respective States where they were rendered, and do not serve to illustrate the law of this State.

"The decree of the court in dismissing the bill was correct, and will be affirmed."

Messrs. TENNEY, HAWLEY & COFFEEN, for the appellants:

The provisions of the Assignment act of 1877 extend beyond the cases in which a formal deed of assignment is executed, and cover all transfers by which an insolvent debtor, directly or indirectly, disposes of substantially all of his property to a few of his creditors to avoid an equal distribution of his estate. *Preston* v. *Spaulding*, 120 Ill. 208; *National Bank* v. *Rehm*, 126 id. 461; *Oil Co. National Bank*, id. 584; *Holt* v. *Bancroft*, 30 Ala. 193; *Hanchett* v. *Waterbury*, 115 id. 220; *White* v. *Cotzhausen*, 129 U. S. 329.

The letter of attorney, and the acts under it, virtually constituted an assignment of the debtor's property. *Englebert* v. *Blanjot*, 2 Whart. 240; *Watson* v. *Bagley*, 12 Pa. St. 164; *Falton's Appeal*, 42 id. 245; *Wallace* v. *Wainwright*, 87 id. 263; *Freund* v. *Jagerman*, 26 Fed. Rep. 812; *Martin* v. *Hansman*, 14 id. 160; *Neil* v. *Pollock*, 30 id. 813; *Bock* v. *Perkins*, 28 id. 123; *Wilks* v. *Walker*, 22 S. C. 108; *Page* v. *Smith*, 24 Wis. 368; *Winner* v. *Hoyt*, 66 id. 267; *Harkrader* v. *Leiby*, 4 Ohio St. 602; *Bloom* v. *Noggle*, id. 45; *Murphy* v. *Caldwell*, 50 Ala. 461; *Holt* v. *Bancroft*, 30 id. 200; *Bonus* v. *Carter*, 311 Neb. 566; *Thompson* v. *Heffner*, 11 Bush, 359; *Johnson's Appeal*, 103 Pa. St. 378; *Miners' Nat. Bank Appeal*, 57 id. 193.

Mr. EMERY S. WALKER, for the appellees:

In the cases of *Preston* v. *Spaulding*, 120 Ill. 208, *National Bank* v. *Rehm*, 126 id. 461, and *Hanford Oil Co.* v. *National Bank*, id. 554, there was a deed of assignment.

The common law right of making preferences has been repeatedly recognized by this court. *Francis* v. *Rankin*, 84 Ill. 169; *Railroad Co.* v. *Watson*, 113 id. 195.

The statute prohibits preferences only in assignments, and not preferences otherwise. Judgments confessed to secure creditors are such preferences as are avoided by the act. *Johnson's Appeal*, 103 Pa. St. 173.

Preferences do not constitute an assignment.

Per Curiam: The questions presented in this case have been thoroughly considered, both in this and kindred cases, and we are entirely satisfied with the correctness of the views of the Appellate Court, as expressed by Mr. Justice Moran in the foregoing opinion. Like ruling will be found in *Weber* v. *Mick*, 131 Ill. 520.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*