Roe C. Black et al., individually and as representatives of all creditors and stockholders of Black Ranches, Inc., Appellants, v. John M. Palmer, et al., Appellees.

Gen. No. 47,106.

First District, First Division.

October 21, 1957.

Rehearing denied November 13, 1957.

Released for publication December 5, 1957.

William C. Wines, of Chicago, for appellants.

Thomas H. Alcock, of Chicago, for defendant-appellee, John M. Palmer; Sidley, Austin, Burgess & Smith, of Chicago, for defendant-appellee, Marlon Brando, Jr. (Henry A. Preston, of counsel).

JUDGE ROBSON delivered the opinion of the court. Plaintiffs appeal from an order striking an amendment to their complaint and dismissing the action with

prejudice. By their complaint in chancery they seek to establish and enforce a trust under which they assert a variety of claims for equitable relief, including the right to maintain a stockholder's derivative suit. The question fundamental to this action is whether or not plaintiffs are beneficiaries of a trust for the benefit of creditors.

On April 14, 1952, Roe R. Black and Avis C. Black, owners of all the capital stock of Black Ranches, Inc., a Nebraska corporation, conveyed their stock to J. A. Cobbey, as trustee. The agreement was oral and the transfer of the stock took place in Chicago. New certificates of stock were issued to Cobbey in his own name. The record indicates that Cobbey made subsequent written acknowledgments that he held the stock as trustee for the creditors and stockholders of the corporation of Black Ranches, Inc. These writings, executed only by Cobbey, recited that he held the stock "for the purpose of conserving the assets of Black Ranches, Inc. for the repayment of the creditors of said corporation," and that he had no beneficial ownership in the stock. The purpose of the stock transfer was apparently to give Cobbey control of the corporation and the ultimate power to supervise its management by exercise of the voting rights in the stock. The record fails to reveal the financial status of Black Ranches, Inc. at the time of the transfer of stock from the Blacks to Cobbey. In November, 1954, a petition was filed in the United States District Court for the District of Nebraska for the reorganization of Black Ranches, Inc. Prior to the filing of the amended complaint in the instant case, the United States District Court for Nebraska appointed a trustee in bankruptcy to administer the property of Black Ranches, Inc.

Plaintiff Black claims to be a creditor of the corporation for cash advances, car expenses, and unpaid salary which became due to him at various times between October, 1949, and September, 1951. The total

209

amount of his claim is $2,027.14. Plaintiffs Culpepper, Parker and Brown operate a veterinary service and claim an unpaid balance of $1,187.13 on an open account for services rendered between November, 1950, and September, 1952. Neither of these claims was reduced to judgment.

Defendants are J. A. Cobbey, John M. Palmer, Marlon Brando, Sr. and Marlon Brando, Jr. Cobbey is the alleged trustee for the creditors and stockholders of Black Ranches, Inc. Palmer and Brando, Senior, were officers and directors of the corporation prior to the commencement of this action. Brando, Junior, is a judgment creditor of the corporation.

This action was filed and service was had only upon defendants Palmer and Brando, Junior. Defendants moved to strike the complaint. Their motion was granted with leave to plaintiffs to amend. Plaintiffs filed an amendment and a motion to strike was again allowed. The complaint in both its original and amended form alleges that plaintiffs, as creditors of Black Ranches, Inc., are beneficiaries of a trust for creditors and also stockholders of the corporation, inasmuch as the *res* of the trust of which they claim to be beneficiaries consists of the stock of Black Ranches, Inc. They seek to establish and enforce the trust and assert any claims accruing to the equitable stockholders of Black Ranches, Inc.

Plaintiffs contend that the transfer of stock from Roe R. Black and Avis C. Black to Cobbey created a trust in the nature of an assignment for the benefit of creditors. Defendants argue that the complaint, as amended, does not set forth the factual basis for the maintenance of the action as a stockholder's derivative suit, a creditors' bill, or a suit by the beneficiaries of a trust to enforce the trust.

A trust for the benefit of creditors as a class is recognized in equity under the theory that a failing

or insolvent debtor may assign all or a portion of his property to a third party as trustee for the purpose of paying the creditors from a distribution of the proceeds received upon a sale of the *res*. Weber v. Mick, 131 Ill. 520 (1890); Tribune Co. v. Canger Floral Co., 312 Ill. App. 149 (1941). Trusts of this nature are commonly known as assignments for the benefit of creditors and have an early history in the law of this state. See Cross v. Bryant, 2 Scammon 36 (1839). In so far as creditors are concerned, the alleged trust must stand or fall under the rules applicable to common law assignments for the benefit of creditors.

██ From 1877 until 1939 there was a statute in Illinois governing voluntary assignments for the benefit of creditors. (See Ill. Rev. Stat. 1937, ch. 10¾). The statute required that the assignee file an inventory of the property and its valuation, that he give a bond to the state for twice the value of the property, that he give notice to the creditors named by the assignor, and that he submit a list to the county court of those creditors making claims under the assignment. See Ill. Rev. Stat. 1937, ch. 10¾, secs. 2, 3, 4. Prior to this statutory regulation the courts gave close scrutiny to the powers vested in the assignee by the instrument of assignment. Where the powers of the assignee were clearly limited to a disposition in the best interests of the creditors the trust was valid. Sackett v. Mansfield, 26 Ill. 21 (1861); Whipple v. Pope, 33 Ill. 334 (1864); Blow v. Gage, 44 Ill. 208 (1867). However, where the assignee could sell on credit, was free from liability on all but willful defaults, or could fix the rights of the creditors at will, the trust was invalid. Nesbitt v. Digby, 13 Ill. 387 (1851); McIntire v. Benson, 20 Ill. 500 (1858); Bowen v. Parkhurst, 24 Ill. 257 (1860). The statute rendered void any provision in an assignment giving preference to one debt over another. Ill. Rev. Stat. 1937, ch. 10¾, sec. 13. At common law a

preference of creditors in an assignment was valid. Cross v. Bryant, supra; Howell v. Edgar, 3 Scammon 417 (1842); Hudson v. Maze, 3 Scammon 578 (1842). The legal effect of the statute prior to its revocation in 1939 was suspended by the National Bankruptcy Act of 1898. Pogue v. Rowe, 236 Ill. 157 (1908); Danville Auburn Auto Co. v. National Trust & Credit Co., 212 Ill. App. 116 (1918); International Shoe Co. v. Cline, 279 Ill. App. 601 (1935).

■ While the statute suspended the common law its effect was merely to modify and regulate existing common law rights. J. Walter Thompson Co. v. Whitehed, 185 Ill. 454, 461, 462 (1900); Union Trust Co. v. Trumbull, 137 Ill. 146, 158 (1891). As indicated heretofore the act made definite and certain the regulations which were to govern the powers of the trustee. The act modified the common law rule with respect to preference. However, the act merely incorporated the existing common law rule that a written instrument was essential to the creation of a valid common law assignment for the benefit of creditors.

■ ■ The first section of the statute provided that every debtor making an assignment should annex to the assignment an inventory of his property and a list of his creditors together with the amount of their claims. It provided further that every assignment should be acknowledged and recorded. See Ill. Rev. Stat. 1937, ch. 10¾, sec. 1. In Price v. Laing, 152 Ill. 380 (1894) it was held that a parol assignment of property was not a voluntary assignment for the benefit of creditors within the contemplation of the act, stating the necessity for a written instrument as follows (p. 385):

"The declaration of trust is as much an essential part of an assignment for the benefit of creditors as is the conveyance or transfer of property. It, of course, needs no citation of authorities to show that the title

212

to personal property, goods and chattels may be transferred by parol and without any writing, and may be proved by oral testimony. The claim and the logic of appellants would lead to this result: that a writing is not essential to establish either the transfer of title or the declaration of trust, and therefore neither is a prerequisite to a valid assignment for the benefit of creditors, and such an assignment may rest wholly in parol. A result such as this is not in consonance with the common understanding and practice in the mercantile and business community, with the doctrine laid down in the books, with the adjudged cases, or with the evident intent of the legislature as indicated by the provisions of the act."

In Farwell v. Nilsson, 133 Ill. 45 (1890) the court defined the meaning of the word assignment, its form, and contents as understood in the law of this state at the time of the adoption of the Act (p. 49):

"The word 'assignment' had, at the time this statute was adopted, a well defined meaning, understood by all the people, and it has no different meaning in said act. . . . According to the common acceptation of the term, it is a transfer, without compulsion of law, by a debtor, of his property to an assignee, in trust, to apply the same, or the proceeds thereof, to the payment of his debts, and to return the surplus, if any, to the debtor. As to the form and contents of it, it has always been understood, in this State, to be a written deed of conveyance, executed by the assignor, as party of the first part, to the assignee, as party to the second part, reciting the grantor's indebtedness and inability to pay, and conveying his property, real and personal, by apt words of sale and transfer, to the assignee, in trust, to take possession of and sell the same, and to collect the outstanding debts, and out of the proceeds to pay the creditors."

213

From the language of these cases, it is clear that the requirement that a trust for creditors be created by a written instrument was embodied in the common law of this state prior to the adoption, in 1877, of the act relating to voluntary assignments for the benefit of creditors. See also Gibson v. Rees, 50 Ill. 383, 401 (1869); Walker v. Ross, 150 Ill. 50 (1894); The Browne-Chapin Lumber Co. v. The Union National Bank of Chicago, 159 Ill. 458 (1896). It is equally clear that this requirement is independent of the provisions in the Statute of Frauds pertaining either to a promise to answer for the debt of another or to the creation of an express trust of realty. A written instrument serves both as a security against fraud and collusion and as a necessary means of giving effect to the assignment. See Burrill on Assignments, sec. 127 (4th Ed., 1882). Although no particular form of writing is necessary so long as the intention of the parties may be inferred from the instrument (see Farwell v. Cohen, 138 Ill. 216 (1891); 2 Perry, Trusts and Trustees, sec. 589 (6th Ed., 1911,)) the instrument must be one to which both the assignor and assignee are parties. Farwell v. Nilsson, supra.

Plaintiffs argue that Cobbey's written acknowledgments that he held the stock as a trustee for the creditors of the corporation satisfies any requirement that the trust be executed in writing. In support of this contention they rely upon Watson v. Willerton, 258 Ill. App. 390 (1930), in which a declaration of trust in the trustee's bill of complaint was held sufficient and his power of sale necessarily implied from the nature of the trust, which was an alleged assignment for the benefit of creditors. The case involved a bill to establish and enforce a trust for creditors and to remove any cloud on the trustee's title to the real estate constituting the trust *res*. The real estate was conveyed by the debtors to plaintiff Watson by means of a

214

statutory warranty deed in the usual form. There was an oral agreement between the grantors and Watson that the real estate should be sold and the proceeds distributed pro rata among the creditors of the grantors, except those holding mortgage liens upon the real estate. Subsequent to the conveyance the respondent obtained a judgment against the grantors. Meanwhile Watson had negotiated a sale of the property in accord with his agreement with the grantors. Fearing that the respondent might claim a lien on the property and create a cloud on his title Watson filed a bill to establish the trust and substantiate his title to the real estate. The court held that the defense of the statute of frauds was available only to the parties to the alleged trust agreement, but not to the respondent, and further that the declaration of trust in the bill of complaint was a competent and legally effective way of expressing the trust. The court held also that the power of the trustee to sell property is necessarily implied in an assignment for the benefit of creditors.

The authority relied upon in that case has been advanced by the plaintiffs in the instant action. The cases cited stand for the principle that, in satisfaction of the statute of frauds, an express trust in realty may be declared by the answer in chancery of a party legally competent to declare the trust. See Fox v. Fox, 250 Ill. 384 (1911); Myers v. Myers, 167 Ill. 52 (1897); Kingsbury v. Burnside, 58 Ill. 310 (1871). The plaintiffs also cite McDiarmid v. McDiarmid, 368 Ill. 638 (1938), which holds that a memorandum in writing executed by the trustee will satisfy the requirement of the statute of frauds that an express trust in realty be executed in writing, holding also that the terms of the trust may be established by parol evidence. These cases as well as the cases cited in the Watson case dealing with the powers of a trustee do not involve

215

assignments for the benefit of creditors. The latter merely recite the rule that a power of sale may be inferred from the terms of an express trust in writing. See Cherry v. Greene, 115 Ill. 591 (1886); Illinois Christian Missionary Society v. American Christian Missionary Society, 277 Ill. 193 (1917).

 The decision of the court in Watson v. Willerton, supra, is not in accord with the law applicable to common law assignments for the benefit of creditors as stated by our Supreme Court in Price v. Laing, supra, and Farwell v. Nilsson, supra. The failure of Roe R. Black, Avis C. Black and Cobbey to execute a written instrument setting forth the powers of Cobbey as trustee renders invalid the purported trust in the instant case. The plantiffs are not, therefore, beneficiaries of a trust for creditors and had no standing to maintain this action.

There is pending in the United States District Court for the District of Nebraska a reorganization proceeding under chapter 10 of the Bankruptcy Act involving Black Ranches, Inc. This proceeding was filed over a year prior to the institution of this suit. A trustee has been appointed and is now acting. Any rights or claims that plaintiffs purport to have may be asserted by the trustee in that proceeding.

The trial court dismissed the action "with prejudice." In view of our findings the "with prejudice" part of the order was erroneous. That part of the order is, therefore, stricken. In all other respects the action of the trial court is affirmed.

Order affirmed.

SCHWARTZ, P. J. and McCORMICK, J., concur.