ILLINOIS BELL TELEPHONE COMPANY, Plaintiff-Appellant, v. WOLF FURNITURE HOUSE, INC., Defendant-Appellee.

First District (2nd Division)   No. 85—3417

Opinion filed June 2, 1987.

Law Offices of Kenneth Baker & Associates, of Chicago (Kenneth Baker and David S. Miller, of counsel), for appellant.

Carmel, Baker & Marcus, Ltd., of Chicago (Karen R. Goodman, of counsel), for appellee.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

In order to satisfy a judgment obtained against Wolf Furniture House, Inc. (Wolf Furniture), Illinois Bell Telephone Company (IBT) brought this action seeking a turnover of funds held in a money market account at Mid-City National Bank of Chicago (Mid-City) in the name of James E. Carmel (Carmel), as trustee for Wolf. The trial court denied IBT's petition. We reverse.

Because it was experiencing financial difficulties, in May 1982 Wolf Furniture decided to cease doing business and convened several meetings of its creditors regarding the best method of liquidating and distributing its assets. Attending these meetings were Gilbert Wolf, the president of Wolf Furniture, Sherwin Winer (Winer), attorney for Wolf Furniture, representatives of Exchange National Bank of Chicago (Exchange), a secured creditor, and Carmel, representing several of the unsecured creditors. As a result of these meetings, the parties agreed that a liquidation sale would be conducted by Sales Results, Inc., and that the proceeds from the sale would go towards satisfying the secured debt owed to Exchange. After the sale, the only remaining assets would be Wolf Furniture's accounts receivable, consisting primarily of installment payments due to it from its customers. Carmel and Gilbert Wolf agreed orally that the accounts receivable would

be transferred to Carmel for collection and that Carmel would then use the proceeds to extinguish Wolf Furniture's secured and tax debts and distribute the remainder on a pro-rata basis to all of its unsecured creditors.

Sales Results, Inc., conducted the liquidation sale in August 1982, and Wolf Furniture terminated business officially on August 30. The balance of Wolf Furniture's assets, consisting of "customer account cards" to be used for collection of the accounts receivable and $2,873.63 in installment payments received, was transferred to Carmel on October 15, 1982, along with a letter from Winer, which stated:

"Dear Jim [Carmel],

I am forwarding to you, along with the letter, the following items:

1. Copies of letter forwarded to customers of Wolf Furniture House, Inc.

2. Envelope containing $2,873.63 being payments received to date.

3. List of customers accounting for those payments; said list reflects the balance due on each account.

4. Packet of all customer account cards set forth in that list. (The payments accounted for herein have already been entered on the customer cards.)

5. A list of furniture and office equipment owned by the corporation as prepared by Mr. Wolf.

The contracts which support this first package of customer cards are in the possession of the Exchange National Bank. The cards for those customers who are not paying on a monthly basis will be forwarded to you as soon as they are received by me along with an updated list of payables and copies of all known contracts and leases. I am pushing Mr. Wolf and hope to have this for you within the next few days. Thank you very much.

Sincerely yours,
s/s Sherwin Winer"

As illustrated, Winer's letter did not detail the powers which Carmel had over the transferred property, nor did it refer to Carmel as assignee for the benefit of creditors. The October 15 correspondence also included a note from Gilbert Wolf which advised customers of Wolf Furniture that the enterprise had ceased doing business and designated Carmel as the recipient of all future installment payments.

Carmel deposited the proceeds he received from Winer and those

that he subsequently received from Wolf Furniture's accounts receivables in a bank account he had opened at United Bank of America in late 1982 or early 1983. In April 1984, Carmel transferred the funds to a money market account at Mid-City and executed a signature card as sole signatory on account No. 67-03437 as trustee for Wolf Furniture; but on Mid-City's Statement of Account Carmel was listed as escrowee for Wolf Furniture. Carmel testified later that no one except he had the power to withdraw funds from the account and that he made a disbursement of approximately $500 out of the account to the Internal Revenue Service for taxes due.

During the dissolution process, Carmel communicated with the general unsecured creditors of Wolf Furniture on three occasions. On May 18, 1982, Carmel sent a letter to the creditors describing the agreements reached concerning liquidation and distribution and notifying them of his duty to "monitor the liquidation process and arrange for periodic pro-ration distribution to unsecured creditors once the obligation due Exchange has been liquidated in full." On September 29 Carmel sent another letter to the creditors informing them that the liquidation sale was complete and that his office was in the process of collecting the accounts receivable. A third letter, dated April 11, 1983, related that Carmel was experiencing some difficulty collecting the outstanding debts and that his law firm had not received any compensation for its services rendered in this matter. In none of this correspondence did Carmel inform the creditors that he was acting as an assignee for the benefit of creditors.

IBT was one of the unsecured creditors who received the communications referred to above, but rather than wait for its pro-rata distribution, IBT brought an action to compel payment of a debt owed for telephone service rendered to Wolf Furniture. In response to a summons in this action, Winer wrote counsel for IBT and stated that Wolf Furniture was "out of business" and that dissolution was being handled by Carmel through "an informal assignment for the benefit of creditors." IBT nevertheless proceeded to obtain a default judgment against Wolf Furniture in the sum of $11,096.22 and served Mid-City with a citation to discover assets belonging to Wolf Furniture. Mid-City disclosed the above-mentioned account in the name of James Carmel with a balance of $25,599.03, and IBT filed a motion for a turnover of those funds in order to satisfy its judgment.

On June 20, 1985, the trial court held a hearing on the turnover issue, and on November 20, 1985, it denied IBT's motion in an order, holding that "an express trust in personal property was created by the debtor, that Carmel was trustee, further, by his letters, Carmel,

an attorney, assumed the duty of collecting and distributing the funds." The judge also concluded that the general creditors of Wolf were the beneficiaries of such trust.

In seeking to affirm the trial court, Carmel, the appellee, presents two alternative positions. Initially, he claims that the October 15 letter he received from Winer, his subsequent actions to collect and segregate Wolf Furniture's assets, and his correspondence with Wolf Furniture's unsecured creditors established a valid assignment for the benefit of creditors and that IBT cannot reach the funds held by Carmel because property in the hands of an assignee under a valid assignment is not subject to judicial process such as attachment or garnishment. (*Bach v. Chas. Weiner & Sons, Inc.* (1955), 6 Ill. App. 2d 284, 127 N.E.2d 279.) Alternatively, Carmel argues that we can affirm the actual holding of the trial court by finding that an express trust in personal property was created in which the beneficiaries are the creditors of Wolf Furniture. Under this option, a formal writing establishing the trust does not need to be shown since Illinois law does not require a written instrument for the creation of an express trust in personal property. *Price v. State of Illinois* (1979), 79 Ill. App. 3d 143, 148-49, 398 N.E.2d 365.

In contrast, IBT maintains that this court can uphold the trial court only by finding that the relationship between Carmel and Wolf Furniture constituted a valid assignment for the benefit of creditors. IBT asserts such a relationship was not established because Carmel and Wolf Furniture did not comply with the common law requirements for a valid assignment for the benefit of creditors in that they were not parties to a written agreement delineating the powers of the assignee over the trust *res.* (*Price v. Laing* (1894), 152 Ill. 380, 38 N.E. 921; *Farwell v. Nilsson* (1890), 133 Ill. 45, 24 N.E. 74; *Black v. Palmer* (1957), 15 Ill. App. 2d 207, 214, 145 N.E.2d 797.) Therefore, the argument runs, since the assignment is invalid, the assignee, Carmel, has acquired no rights as against any creditor seeking satisfaction of a debt, and the property he holds is subject to attachment or garnishment by IBT. *Tribune Co. v. R. & J. Furniture Sales, Inc.* (1959), 20 Ill. App. 2d 370, 375, 155 N.E.2d 844; *Tribune Co. v. Canger Floral Co.* (1941), 312 Ill. App. 149, 158, 37 N.E.2d 906.

■ We first address the issue of whether Carmel and Wolf Furniture established a valid and enforceable assignment for the benefit of creditors. An assignment for the benefit of creditors is a voluntary transfer by a debtor of his property to an assignee in trust for the purpose of applying the property or proceeds thereof to the payment of his debts and returning the surplus, if any, to the debtor. (*Black v.*

*Palmer* (1957), 15 Ill. App. 2d 207, 210-11, 145 N.E.2d 797.) Such an assignment implies a trust and contemplates the intervention of a trustee. (*Tribune Co. v. Canger Floral Co.* (1941), 312 Ill. App. 149, 155-56, 37 N.E.2d 906.) The assignment "passes the legal and equitable title to the property absolutely, beyond the control of the assignor." (*Browne-Chapin Lumber Co. v. Union National Bank of Chicago* (1896), 159 Ill. 458, 465, 42 N.E. 967.) An assignment for the benefit of creditors, therefore, is simply a unique trust arrangement in which the assignee (or trustee) holds property for the benefit of a special group of beneficiaries, the creditors.

The record indicates that both Carmel and Wolf Furniture clearly desired to create an assignment for the benefit of creditors. For example, Sherwin Winer, attorney for Wolf Furniture, so admitted when he stated in the letter he wrote to counsel for IBT noted above that the property had passed to Carmel pursuant to "an informal assignment for the benefit of creditors." However, in order to create a valid assignment for the benefit of creditors, the debtor and assignee must comply with certain common law formalities.[1] The only requisite in serious dispute in this case is whether the assignment must be in a writing containing an express declaration of trust, to which both the debtor and the trustee-assignee are parties.

Most directly on point is *Black v. Palmer*, which, as in the case at hand, concerned the issue of whether an assignment is to be held invalid because of the failure to satisfy the writing requirement. The salient facts in *Black* are as follows: Pursuant to an oral agreement, Roe and Avis Black conveyed all the stock of Black Ranches, Inc., to Cobbey as trustee. Similar to Carmel's action in this case, Cobbey made subsequent written acknowledgments that he held stock as trustee "for the purpose of conserving the assets of Black Ranches, Inc. for the repayment of the creditors of said corporation." Plaintiffs contended that the transfer of stock created a trust in the nature of an assignment for the benefit of creditors, but the court disagreed, stating that "[a]lthough no particular form of writing is necessary so long as the intention of the parties may be inferred from the instrument *** the instrument must be one to which both the assignor and assignee are parties." (*Black v. Palmer* (1957), 15 Ill. App. 2d 207, 214, 145 N.E.2d 797.) The *Black* court went on to hold that the failure of the parties to execute a written instrument setting forth the powers of the assignee-trustee rendered the purported trust invalid.

---

[1]See generally Illinois Institute of Continuing Legal Education, *Creditors Rights*, sec. 18.4 (E. Crane & A. Dannen eds. 1980).

15 Ill. App. 2d 207, 216, 145 N.E.2d 797.

■ In an effort to satisfy the writing requirement in the case now before us, Carmel presented to the trial court a copy of the October 15 letter from Winer, Wolf Furniture's attorney, to Carmel describing what was transferred, as well as the various communications from Carmel to Wolf Furniture's creditors advising them that he would undertake the liquidation of Wolf Furniture's assets and accounts receivables and distribute the collections to the creditors. In order for the parties to have created a valid assignment for the benefit of creditors as mandated by *Black*, Wolf Furniture, the assignor, and Carmel, the assignee, would have had to be parties to a written instrument which set forth the powers of the assignee over the trust *res*. As there was no such written instrument executed by the necessary parties in this case, we are compelled to find that the attempted assignment for the benefit of creditors was invalid.

Other jurisdictions are divided on the question of whether creditors can attach the *res* in the hands of an assignee when an attempted assignment for the benefit of creditors is invalid. Some authorities hold that the assignee takes as a bailee of the assignor (*Calumet Paper Co. v. Haskell Show Printing Co.* (1898), 144 Mo. 331, 340, 45 S.W. 1115, 1117); others support the view that the assignee takes the property subject to a resulting trust in favor of the assignor (*McDermith v. Voorhees* (1891), 16 Colo. 402, 408, 27 P. 250, 252); and still others by statute prohibit any creditor from obtaining priority by reason of an assignment's being declared invalid or void. Rather, the property of the insolvent debtor is administered by the assignee, under the direction of the court, for the ratable benefit of all the creditors. (*Brown v. Wilkes* (1922), 153 Ark. 545, 552, 241 S.W. 383, 385-86; *Pobreslo v. Joseph M. Boyd Co.* (1932), 210 Wis. 20, 34, 242 N.W. 725, 730, *aff'd* (1933), 287 U.S. 518, 77 L. Ed. 469, 53 S. Ct. 262.) In the absence of such specific statutory authority, however, the result as to creditors is generally the same, namely, that an invalid assignment deprives them of none of their rights and that the property of the assignor is as fully subject to their attachment as if no assignment had been attempted. *State ex rel. Enderlin State Bank v. Rose* (1894), 4 N.D. 319, 322-23, 58 N.W. 514, 516; *McCord-Brady Co. v. Mills* (1898), 8 Wyo. 258, 264-65, 56 P. 1003, 1008.

■ Illinois authorities follow this general rule. For example, in *Tribune Co. v. Canger Floral Co.*, the court struck down as invalid an assignment which contained conditions onerous to the creditors. Since the assignment was invalid, the plaintiff therein was allowed to reach the funds in the hands of the garnishee by garnishment pro-

ceedings. (*Tribune Co. v. Canger Floral Co.* (1941), 312 Ill. App. 149, 159, 37 N.E.2d 906.) And in *Tribune Co. v. R. & J. Furniture Sales, Inc.*, the attempted assignment was void because it gave the assignee the power both to compromise claims and to prefer creditors and hence was an indirect coercion of creditors into releasing their claims for less than their full debt. The court concluded that "if the assignment is void and has not been consented to by the creditor, then the assets in the hands of the trustee are subject to garnishment by a creditor." (*Tribune Co. v. R & J Furniture Sales, Inc.* (1959), 20 Ill. App. 2d 370, 375, 155 N.E.2d 844.) Accordingly, we hold that under Illinois law, IBT is entitled to garnish the funds held by Carmel.

In concluding that the lack of a formal written agreement invalidates the attempted assignment for the benefit of creditors and allows creditors to garnish, we are, of course, not persuaded by *Watson v. Willerton* (1930), 258 Ill. App. 390, 169 N.E.2d 166, a case which Wolf Furniture contends creates a divergent body of case law standing for the proposition that a formal writing is not necessary to the creation of a binding assignment. The court in *Watson* held that where an assignment in trust for the benefit of creditors is made by deed absolute on its face and without a written declaration of the trust, a declaration of the trust in a bill of complaint by the assignee is legally effective to express the trust and amounts to a waiver of the statute of frauds. 258 Ill. 390, 400-01, 169 N.E.2d 166.

*Watson* fails to impress us in light of the reasoning and holding in *Black*, the more recent of the two cases. In specifically rejecting *Watson*, the *Black* court reasoned that it was an aberration and hence not in accord with the law applicable to common law assignments as held by the Illinois Supreme Court in *Farwell v. Nilsson* (1890), 133 Ill. 45, 24 N.E.2d 74, and *Price v. Laing* (1894), 152 Ill. 380, 38 N.E. 921. (*Black v. Palmer* (1957), 15 Ill. App. 2d 207, 216, 145 N.E.2d 797.) This reasoning is substantiated when one considers the authorities the *Watson* court relied upon and cited in reaching its decision, authorities which hold that, in satisfaction of the statute of frauds, an express trust in realty may be declared by the answer in chancery of a party legally competent to declare the trust. (*Fox v. Fox* (1911), 250 Ill. 384, 95 N.E. 498; *Myers v. Myers* (1897), 167 Ill. 52, 47 N.E. 309; *White v. Ross* (1895), 160 Ill. 56, 43 N.E. 336.) As the *Black* decision correctly points out, these cases are simply declaratory of the law with regard to trusts and do not involve assignments for the benefit of creditors. We therefore believe the law to be clear that where the parties to an attempted assignment for the benefit of creditors fail to satisfy the writing requirement, the assign-

ment is invalid, and a creditor may garnish.

In reaching such a conclusion, we necessarily reject Carmel's alternative position based upon the holding of the trial court. As previously mentioned, Carmel argues that we can affirm the trial court by finding that "an express trust in personal property was created by debtor, that Carmel is trustee, further, by his letters, Carmel, an attorney, assumed the duty of collecting and distributing the funds," and that because of this trust arrangement, IBT is prohibited from garnishing the trust *res*. In support of this holding, the trial court cited *Velde v. Reardon* (1944), 322 Ill. App. 177, 54 N.E.2d 91 (abstract of opinion), *Hamilton Bancshares, Inc. v. Leroy* (1985), 131 Ill. App. 3d 907, 476 N.E.2d 78, *Liberty Leasing Co. v. Crown Ice Machine Leasing Co.* (1974), 19 Ill. App. 3d 27, 3 N.E.2d 250, and *Holsinger, Theis & Co. v. Holsinger* (1946), 329 Ill. App. 460, 69 N.E.2d 360.

Published only as an "abstract of decision," the full opinion in *Velde* discloses that C. Stark & Sons (Stark), a partnership, contracted with James T. Cole (Cole), doing business as the Frigid Engineering & Equipment Company, for the installation of certain ice machinery. Cole entered into several contracts with suppliers for materials which were used in the project. When Cole encountered financial difficulties, several of the material suppliers threatened to file mechanic's liens against Stark. In order to avoid such action, Stark executed several promissory notes payable to Frigid Engineering & Equipment Company and secured by a chattel mortgage. These notes were delivered to William Reardon, an attorney, and a memorandum addressed to him stated as follows: "Please pay from the mortgage notes of C. Stark & Sons, as paid to you, the following amounts ***." This was followed by a list of the material suppliers with the amount of their respective bills opposite their names. The memorandum further stated that "[w]e agree that the above amounts are correct and are to be paid with their share of the interest received on the above notes, and any balance to be paid to James T. Cole." The memorandum was signed by Cole and all the members of Stark. The payments made by Stark to Reardon on the notes more than covered the indebtedness listed in the memorandum.

The trustee, Reardon, subsequently died, and the Velde Lumber Company, one of the material suppliers referred to above, filed a claim against his estate to reach moneys collected by Reardon and not paid to Velde. The trial court allowed the claim, and the executors of Reardon's estate appealed. The appellate court affirmed the trial court, reasoning that this agreement created a "trust" relation-

ship, and "the fact that no formal trust agreement was ever drawn up by the interested parties" was of no importance, "no particular form of words [being] necessary to create a trust." The court concluded that money held by a trustee under an express trust which he has not accounted for at the time of his death may be recovered from his estate, a finding for which the decision has been cited in other cases. *Russell v. United States* (N.D. Ill. 1966), 260 F. Supp. 493, 500; *Edgerton v. Johnson* (7th Cir. 1949), 178 F.2d 106, 109.

Moreover, though similar in some respects, the factual differences between *Velde* and the case *sub judice* are such that *Velde* is clearly distinguishable. Apparently, Stark was not even the debtor, but rather its contractor, Cole, was the party in financial difficulty. Hence, the transfer of the promissory notes was not due to Stark's money problems, but rather it was to prevent mechanic's liens from being filed against Stark. Furthermore, unlike Wolf Furniture, there is no evidence that Stark transferred all or substantially all of its assets to a third party. On the contrary, the case discloses that Stark had sufficient resources to pay in full the claims of all of those creditors of Cole who had supplied materials for Stark's project.

Furthermore, as discussed earlier, if two parties fail in an attempt to create a valid assignment for the benefit of creditors, Illinois courts have not recognized a trust as a fall-back position, but rather they have allowed the creditor to garnish. (*Tribune Co. v. Canger Floral* (1941), 312 Ill. App. 149, 37 N.E.2d 906; *Tribune Co. v. R. & J. Furniture Sales, Inc.* (1959), 20 Ill. App. 2d 370, 155 N.E.2d 844.) For example, in rejecting the trust argument, the court in *Black v. Palmer* stated:

> "A trust for the benefit of creditors as a class is recognized in equity under the theory that a failing or insolvent debtor may assign all or a portion of his property to a third party as trustee for the purpose of paying the creditors from a distribution of the proceeds received upon a sale of the *res*. [Citations.] Trusts of this nature are commonly known as assignments for the benefit of creditors ***. [Citation.] In so far as creditors are concerned, *the alleged trust must stand or fall under the rules applicable to common law assignments for the benefit of creditors*." (Emphasis added.) (*Black v. Palmer* (1957), 15 Ill. App. 2d 207, 210-11, 145 N.E.2d 797.)

In addition, the supreme court case of *Price v. Laing* (1894), 152 Ill. 380, 385, 38 N.E. 921, notes how upholding Carmel's alternative position would effectively vitiate the law regarding assignments for the benefit of creditors:

"The claim and the logic of appellants would lead to this result: that a writing is not essential to establish either the transfer of title or the declaration of trust, and therefore neither is a prerequisite to a valid assignment for the benefit of creditors, and such an assignment may rest wholly in parol. A result such as this is not in consonance with the common understanding and practice in the mercantile and business community, with the doctrine laid down in the books, with the adjudged cases, or with the evident intent of the legislature as indicated by the provisions of the act."

Hence, in order to avoid the unacceptable result of parties being able to effectuate an assignment for the benefit of creditors without reducing the terms of the assignment to an agreement in writing, we determine that this case must be resolved by application of the common law of assignments for the benefit of creditors and not by trust law.

We have examined the other cases cited by the trial judge in reaching his decision, but in light of our determination that the only issue *sub judice* is whether a valid assignment for the benefit of creditors was created, we have found none of them applicable to a resolution of the issues herein. For example, *Hamilton Bancshares, Inc. v. Leroy*, (1985), 131 Ill. App. 3d 907, 476 N.E.2d 78, was apparently cited by the trial court because it defines an express trust, which is simply not in question here. Nor are *Liberty Leasing Co. v. Crown Ice Machine Co.* (1974), 19 Ill. App. 3d 27, 3 N.E.2d 250, and *Holsinger, Theis & Co. v. Holsinger* (1946), 329 Ill. App. 460, 69 N.E.2d 360 helpful. Accordingly, we reverse the trial court and conclude that IBT is entitled to garnish the funds held by Carmel.

Reversed.

BILANDIC and HARTMAN, JJ., concur.