THIRD DIVISION

FILED:  MAY 11, 2005

No. 1-04-2361

PAUL H. SCHWENDENER, Inc., an Illinois corporation,    )    Appeal from the  

 )    Circuit Court of 

Plaintiff-Appellant, )    Cook County

 )

v. )    No. 98 L 1047

 )

JUPITER ELECTRIC COMPANY, INC., an Illinois corporation; )

THOMAS M. GIBSON; RAMI NASSIB; BANCO POPULAR, )

ILLINOIS, an Illinois corporation; and ALEXANDER S. KNOPFLER, )

)

Defendants-Appellees, )

)

and )

) 

JUPITER TECHNICAL SERVICES CORPORATION, an Illinois )

corporation; and FIRST BANK OF SCHAUMBURG, an Illinois banking )

corporation; )    Honorable

 ) Ronald F. Bartkowicz,

Defendants. )    Judge Presiding.  

JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiff, Paul H. Schwendener, Inc. (Schwendener), filed the instant action against Jupiter Electric Company, Inc. (Jupiter), its officers, an accountant to whom Jupiter's assets were assigned, and two of Jupiter's creditors after Jupiter failed to perform on two construction contracts.  During the course of litigation, the trial court entered several orders dismissing various counts of Schwendener's first, third, and fourth amended complaints pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 1998)), granting summary judgment on count VI of its fifth amended complaint, and denying Schwendener leave to file certain counts of the fifth amended complaint.  It is from these orders that Schwendener now appeals and, for the reasons which follow, we dismiss the appeal in part, affirm in part, reverse in part, and remand this cause to the circuit court for further proceedings.   

The following facts are taken from the allegations contained in Schwendener's first, third, and fourth  amended complaints which we accept as true for purposes of examining the circuit court's orders dismissing Schwendener's claims pursuant to section 2-615 of the Code (
Miner v. Gillette Co.
, 87 Ill. 2d 7, 19, 428 N.E.2d 478 (1981)).  Further, as there is no dispute regarding these facts, they have also been accepted as true for purposes of our analysis regarding the trial court's grant of summary judgment.  

Schwendener was hired as the general contractor for the construction of a new enlisted mens bachelor quarters at the naval training center in Great Lakes, Illinois (BEQ project) and a new public library in Woodridge, Illinois (library project).  Schwendener subcontracted the necessary electrical work on both projects to Jupiter.  At the time, Thomas M. Gibson was the president and sole shareholder of Jupiter, and Rami Nassib served as its vice-president and general manager.  Near the end of 1996, after work on the projects had begun, Jupiter was experiencing financial difficulties and was heavily in debt.  Jupiter's creditors included American Midwest Bank & Trust (American), its primary lender and a secured creditor, and the First Bank of Schaumburg (FBS) which had purchased a participation in the loans made by American to Jupiter.  After consulting with a financial analyst, Jupiter met with certain of its creditors and decided that the best course of action was to enter into an assignment for the benefit of its creditors.  Additionally, Jupiter ceased working on the BEQ and library projects on November 27, 1996, and December 23, 1996, respectively.  

On December 23, 1996, Jupiter entered into a "Trust Agreement and Assignment for the Benefit of Creditors" (assignment agreement) under which all of Jupiter's assets were assigned to Alexander Knopfler, a certified public accountant.  Contemporaneously with the execution of the assignment agreement, Knopfler entered into an "Agreement for the Purchase and Sale of Assets" (purchase agreement) with 61875 Corporation, a newly formed corporation.  Nassib was the sole shareholder and president of 61875 Corporation.  Pursuant to the purchase agreement, Knopfler sold all of Jupiter's assets relating to its residential and technical services divisions and certain assets relating to its commercial division to 61875 Corporation for $3,738,500.  The purchase agreement provided that, in the event Knopfler could locate a higher bidder at an auction within 21 days, 61875 Corporation would reconvey the assets to Knopfler.  After notice of the assignment and purchase agreements was given to certain of Jupiter's creditors, an auction for the sale of Jupiter's assets was advertised to the general public.  The auction took place and, having yielded no higher bidders, the sale of Jupiter's assets to 61875 Corporation became final on January 21, 1997.   Two days later, 61875 Corporation amended its articles of incorporation, changing its name to Jupiter Technical Services Corporation. 

In 1998, Schwendener filed the instant action against Jupiter, its officers, Knopfler, and its secured creditors (collectively referred to as "the defendants").  Schwendener amended its complaint numerous times during the proceedings.  According to the general allegations common to all of the amended complaints, by the end of 1996, Jupiter, Gibson, and Integrated Technologies (Integrated), another company owned by Gibson, had incurred a total indebtedness to American in the sum of $4,158,294.  Schwendener alleged that the defendants developed a scheme to repay the debt owed to American and at the same time "shed" certain of Jupiter's other creditors.  It claimed that the defendants colluded to restructure Jupiter by assigning its assets to Knopfler, who then immediately transferred title of selected assets and valuable contracts to 61875 Corporation, a corporation which was created to effectuate the purpose of the scheme.  

Schwendener claimed that, in furtherance of this scheme, American and FBS entered into a financing agreement with Gibson which provided that:  American would loan an additional $250,000 to Jupiter; FBS would loan 61875 Corporation $3,738,500 which would be used to purchase Jupiter's assets from Knopfler, and an additional $400,000 on the date on which the sale of Jupiter's assets became final; and Gibson would "collateralize" part of the loan made by FBS with a certificate of deposit in the amount of $1,069,206.  According to the complaints, Gibson also agreed to pay American $469,794 which, when combined with the payment of $3,738,500 to American from the sale of Jupiter's assets, retired the indebtedness of Gibson, Jupiter, and Integrated to American.  The agreement also provided that 61875 Corporation would pay FBS all amounts received in connection with a project that Jupiter had been working on for the Chicago Transit Authority (CTA).  Schwendener alleged that, along with the transfer of Jupiter's assets, certain of the defendants agreed that Jupiter would "walk off" the BEQ and library projects because they determined that those contracts were unprofitable. 

According to Schwendener, the scheme to restructure Jupiter resulted in:  a satisfaction of the debt owed to American; FBS having outstanding loans in the amount of $3,738,500 and $400,000 owed by 61875 Corporation, whose assets were now "otherwise unencumbered"; FBS receiving partial security from Gibson for its loan to 61875 Corporation and the proceeds from Jupiter's CTA project which was to be carried on by 61875 Corporation; and American purchasing a participation in the loans made by FBS to 61875 Corporation in the amount of $1,938,294 "or roughly half of what was originally owed to American by Gibson and Jupiter."  Based on these allegations, Schwendener's amended complaints purported to assert various actions against the defendants, including a claim of fraud against Jupiter and its officers, breach of contract against Jupiter, "successor liability" against 61875 corporation, breach of fiduciary duty against Knopfler, and numerous other commercial tort claims against Knopfler, Jupiter's officers, and the secured creditors. 

Schwendener has appealed from portions of the circuit court's orders entered on March 11, 1999, March 13, 2000, February 23, 2001, December 19, 2003, and July 14, 2004.  By order of July 14, 2004, the circuit court found that there was no just reason to delay enforcement or appeal from these orders.  Schwendener asserts that our jurisdiction in this matter is pursuant to Supreme Court Rule 304(a) (Rule 304(a)) (155 Ill. 2d R. 304(a)).  We commence our analysis with Schwendener's appeal from the orders entered on March 11, 1999, March 13, 2000, and February 23, 2001, which dismissed various counts of its first, third, and fourth amended complaints pursuant to section 2-615 of the Code. 

A motion brought pursuant to section 2-615 of the Code attacks the legal sufficiency of a complaint based on defects apparent on the face of the pleading.  
Vitro v. Mihelcic
, 209 Ill. 2d 76, 81, 806 N.E.2d 632 (2004).  In ruling on a section 2-615 motion attacking a complaint, a court must accept as true all well-pled facts in the complaint and draw all reasonable inferences therefrom in favor of the plaintiff.  
Vitro
, 209 Ill. 2d at 81; 
Hanna v. City of Chicago
, 331 Ill. App. 3d 295, 303, 771 N.E.2d 13 (2002).  A cause of action should be dismissed pursuant to a section 2-615 motion only if it is clearly apparent that no set of facts can be proven which will entitle the plaintiff to recover.  
Borowiec v. Gateway 2000, Inc.,
 209 Ill. 2d 376, 382, 808 N.E.2d 957 (2004).  Our 
review of a dismissal under section 2-615 is 
de novo
, and we may affirm upon any grounds for which a factual basis exists in the record.  
Colmar, Ltd. v. Fremantlemedia North America, Inc
., 344 Ill. App. 3d 977, 994, 801 N.E.2d 1017 (2003). 
 The critical question on appeal is whether the allegations of the complaint, when viewed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted.  
Borowiec
, 209 Ill. 2d at 382. 

Schwendener first contends that the trial court erred in dismissing count XI of its first amended complaint, repled in its fifth amended complaint to preserve for review the propriety of its dismissal, which purported to state a cause of action for "equitable subordination" against Gibson, American, and FBS.  The gist of the claim is that Gibson, American, and FBS actively participated in executing the assignment agreement knowing that it would "strip Jupiter of much or all of its assets without regard to the rights of existing and future [unsecured] creditors" such as Schwendener.  Schwendener alleged that, by executing the assignment agreement and subsequently "securing [American and FBS's] liens" against 61875 Corporation's property and assets, the actions of Gibson, American, and FBS amounted to "egregious misconduct" warranting the subordination of the respective claims and liens of American and FBS to those of Schwendener.   On March 11, 1999, the trial court dismissed this count on the basis that equitable subordination is not a recognized cause of action in Illinois.  Schwendener asserts that, although no Illinois case has recognized such a cause of action, no "case has rejected such a claim" either.  The issue appears to be one of first impression. 

Pursuant to section 510(c) of the Bankruptcy Code, a federal bankruptcy court, after notice and a hearing, may, "under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim".  11 U.S.C. § 510(c).  Generally, the following three conditions must exist before a bankruptcy court may equitably subordinate a claim under § 510(c): (1) the creditor whose claim is to be subordinated must have engaged in some type of inequitable conduct in connection with the claim being asserted; (2) the misconduct must have resulted in an injury to the other creditors or conferred an unfair advantage upon the creditor whose claim is sought to be subordinated; and (3) equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Code.  
In re Mobile Steel Co.
, 563 F.2d 692, 700 (5
th
 Cir. 1977).  

Equitable subordination, however, is "distinctly a power of federal bankruptcy courts, as courts of equity, to subordinate the claims of one creditor to those of others."  
HBE Leasing Corp. v. Frank
, 48 F.3d 623, 634 (2
nd
 Cir. 1995).  As noted by the United States Court of Appeals for the Second Circuit, this broad equitable power to disallow and reorder claims as codified in the Bankruptcy Code "derives from the Bankruptcy Court's role as administrator of the debtor's estate for the equal benefit of all creditors".  
HBE Leasing Corp.
, 48 F.3d at 634. Because the principle of equitable subordination is particular to bankruptcy law, it is an issue "which can only be decided in a bankruptcy setting."  
In re Poughkeepsie Hotel Associates Joint Venure
, 132 B.R. 287, 292 (Bankr. S.D. N.Y. 1991). 

As equitable subordination is a federal statutory creation available only in bankruptcy proceedings, we agree with the trial court's determination that no such cause of action is recognized in Illinois.  Consequently, we conclude that the trial court properly dismissed count XI of Schwendener's first amended complaint. 

Next, Schwendener contends that the circuit court erred in dismissing its claims for inducement of a breach of fiduciary duty as set forth in counts XV and XVII of its third and fourth amended complaints, both of which counts were repled in its fifth amended complaint.  To adequately explain our resolution of this issue, we first set forth a brief recitation of the procedural history of the litigation leading up to the trial court's dismissal of these counts.  

Count XV of Schwendener's third amended complaint, directed against Gibson, Nassib, American, and FBS, alleged that they induced Knopfler to breach his fiduciary duty to Schwendener, as a creditor of Jupiter.  Count XVII of the third amended complaint, directed solely against American and FBS, alleged that these two defendants also induced Gibson to breach his fiduciary duty to Schwendener.  Banco Popular, as successor-in-interest to American, and FBS moved to dismiss both of these counts, while Nassib and Gibson filed their answer to count XV.  On March 13, 2000, the circuit court dismissed counts XV and XVII of the third amended complaint with prejudice as to Banco Popular, the successor-in-interest to American, and FBS on the basis that Illinois does not recognize a cause of action for inducing an assignee of a corporation's assets or an officer of a corporation to breach a fiduciary duty to the corporation's creditors.  Upon the filing of its fourth amended complaint, Schwendener repled counts XV and XVII to preserve for review the issue of the propriety of their dismissal as to Banco Popular, the successor-in-interest to American, and FBS.  Thereafter, Nassib and Gibson moved to dismiss count XV of the fourth amended complaint.  On February 23, 2001, the trial court entered an order dismissing this count without prejudice as to Gibson and Nassib on the same basis that it dismissed the claims against Banco Popular, as the successor-in-interest to American, and FBS.  The court further granted Schwendener leave to replead the count "to the extent it is able."   Schwendener repled count XV in its fifth amended complaint.  

With respect to the court's March 13, 2000, and February 23, 2001, orders dismissing the inducement claims, Schwendener acknowledges that no Illinois case has expressly recognized a claim for inducing either an assignee of a corporation's assets or an officer of a corporation to breach his fiduciary duty to a creditor when the corporation enters into the "zone of insolvency."  It argues, however, that Illinois has recognized inducement claims in other contexts and there is no reason why such claims cannot be asserted in this instance. 

As an initial matter, we find that we lack jurisdiction to review the February 23, 2001, order dismissing count XV of Schwendener's fourth amended complaint without prejudice as to Gibson and Nassib and granting Schwendener leave to replead the count as to these two defendants.  An order dismissing an action "without prejudice" is not deemed final for purposes of appeal and the trial court's inclusion of a Rule 304(a) finding does not alter our decision in that regard, as "[a] nonfinal order cannot be made final simply by declaring that there is no just reason to delay its enforcement or appeal."  
DeLuna v. St. Elizabeth's Hospital
, 147 Ill. 2d 57, 76, 588 N.E.2d 1139 (1992)
; but see 
Schal Bovis, Inc. v. Casualty Insurance Co.
, 314 Ill. App. 3d 562, 567-68, 732 N.E.2d 1082 (2000).  By its very terms, our jurisdiction under Supreme Court Rule 304(a) is limited to the review of final orders.  155 Ill. 2d R. 304(a).    Because the trial court's order of February 23, 2001, is not a final order, we lack jurisdiction to review it and, as a consequence, we dismiss Schwendener's appeal from that order and consider only its arguments as they relate to the propriety of the circuit court's March 13, 2000, order.  

Illinois recognizes a cause of action for a third party's inducement of a breach of fiduciary duty.  
Village of Wheeling v. Stavros
, 89 Ill. App. 3d 450, 454, 411 N.E.2d 1067 (1980); 
Corroon & Black of Illinois, Inc. v. Magner
, 145 Ill. App. 3d 151, 161, 494 N.E.2d 785 (1986).  As stated in 
Village of Wheeling
, a third party who colludes with a fiduciary in committing a breach of duty, induces or participates in such breach, and obtains the benefits therefrom is directly liable to the aggrieved party.  
Village of Wheeling
, 89 Ill. App. 3d at 455.  Our courts have recognized such inducement claims in a limited number of cases, most often in the context of inducing an agent or employee to breach the fiduciary duty owed to his principal or employer.  See 
e.g.
, 
Village of Wheeling
, 89 Ill. App. 3d at 454-55 (court held that third party induced certain public officials to breach their fiduciary duty to the public);  
Corroon & Black of Illinois, Inc.
, 145 Ill. App. 3d at 161-62 (insurance brokerage company sued competing insurance broker for inducing former employee's breach of fiduciary duty); 
Regnery v. Meyers
, 287 Ill. App. 3d 354, 679 N.E.2d 74 (1997) (court held that brother of trustee of voting trust was directly liable to shareholders for inducing trustee to breach his fiduciary duty by voting in favor of stock sale to himself and brother at below fair market value price).  

It is axiomatic that a predicate to any liability based on a theory of an inducement of a breach of a fiduciary duty is the existence of the fiduciary duty in the first instance.  As a consequence, we first address the issue of whether an assignee of a corporation's assets or a corporate officer owes a fiduciary duty to the creditors of the corporation.  

 An assignment for the benefit of creditors is defined as a voluntary transfer by a debtor of its property to an assignee in trust for the purpose of applying the property or proceeds thereof to the payment of its debts and returning any surplus to the debtor.  
Illinois Bell Telephone Co. v. Wolf Furniture House, Inc
., 157 Ill. App. 3d 190, 194, 509 N.E.2d 1289 (1987).  In other words, an assignment for the benefit of creditors "is simply a unique trust arrangement in which the assignee (or trustee) holds property for the benefit of a special group of beneficiaries, the creditors".  
Illinois Bell Telephone Co
., 157 Ill. App. 3d at 195.  The duties owed by a trustee to the beneficiaries of a trust are well-established.  A trustee owes a fiduciary duty to the beneficiaries and is obligated to carry out the terms of the trust and to act with the highest degree of fidelity and utmost good faith.  
Giagnorio v. Emmett C. Torkelson Trust
, 292 Ill. App. 3d 318, 325, 686 N.E.2d 42 (1997).  
Because the assignee under an assignment for the benefit of creditors is given the duties of a trustee, we believe that the assignee owes a fiduciary duty to the beneficiaries of the assignment, namely, the creditors of the corporation. See also 
Mid-Pacific Dress Manufacturing Co., Ltd. v. Cadinha
, 36 Haw. 732 (1944) ("[a]n assignee for benefit of creditors is a fiduciary upon whom is devolved the duty to exercise the utmost of good faith with respect to such creditors in selling the assigned property"). 

We also find that, under certain circumstances, an officer of a corporation may owe a fiduciary duty to the corporation's creditors. Generally, corporate officers owe a fiduciary duty only to the corporation and its shareholders.  
Brown v. Tenney
, 125 Ill. 2d 348, 360, 532 N.E.2d 230 (1988); 
Beach v. Miller
, 130 Ill. 162, 170, 22 N.E. 464 (1889). However, once a corporation becomes insolvent, the fiduciary duty of an officer is extended to the creditors of the corporation.  
Technic Engineering, Ltd. v. Basic Envirotech, Inc.
, 53 F.Supp.2d 1007, 1010-1011 (N.D. Ill. 1999)
; 
In re Reuscher
, 169 B.R. 398, 403 (Bankr. S.D. Ill. 1994).  The fiduciary duty arises because, from the moment a corporation becomes insolvent, its assets are deemed to be held in trust for the benefit of its creditors.  
Technic Engineering, Ltd
, 53 F.Supp.2d at 1011.
  

Having determined that an assignee under an assignment for the benefit of creditors and an officer of an insolvent corporation owe a fiduciary duty to the corporation's creditors, we believe that a valid claim can be stated for inducing  a breach of that duty.  See 
Regnery
, 287 Ill. App. 3d at 364.  
We must now determine whether the allegations in counts XV and XVII of Schwendener's third amended complaint were sufficient to state such causes of action. 

In order to plead a cause of action for inducement of a breach of fiduciary duty, a plaintiff must allege that a third party:  (1)  colluded with the fiduciary in committing a breach of duty; (2) induced or participated in such breach; and (3) obtained the benefits resulting from the breach of duty.  
Village of Wheeling
, 89 Ill. App. 3d at 455.  Count XV of Schwendener's third amended complaint alleged that, after the assignment agreement was executed, Knopfler owed a fiduciary duty to Schwendener as a creditor of Jupiter, and that American and FBS induced Knopfler to sell Jupiter's assets to 61875 Corporation on terms that were favorable to them and unfavorable to other creditors.  Count XVII of Schwendener's third amended complaint alleged that, at the time the assignment agreement was executed, American and FBS induced Gibson, an officer of Jupiter, into breaching his fiduciary duty to Jupiter's other creditors by promising to finance the sale of Jupiter's assets to 61875 Corporation and entering into an agreement which restructured the personal debt owed by Gibson and Integrated, another company owed by him.  Schwendener further alleged that American and FBS benefitted from these transactions because:  the original debt owed to American was satisfied; thereafter, American and FBS had outstanding loans owed by 61875 Corporation whose assets were now "otherwise unencumbered"; and FBS received partial security from Gibson for its loan to 61875 Corporation as well as the proceeds from Jupiter's CTA project.  Viewing these allegations in the light most favorable to Schwendener, we conclude that it sufficiently stated causes of action for inducement of a breach of fiduciary duty in both counts.  See 
Village of Wheeling
, 89 Ill. App. 3d at 455.  Accordingly, the circuit court erred in dismissing counts XV and XVII of Schwendener's third amended complaint as to Banco Popular, the successor-in-interest to American, and FBS. 

We next address the propriety of the summary judgment granted by the trial court on July 14, 2004, in favor of Knopfler on Schwendener's breach of fiduciary duty claim set forth in count VI of its fifth amended complaint.  Count VI alleged that Knopfler, as assignee for the benefit of Jupiter's creditors, breached the fiduciary duty he owed to Schwendener by 
participating in a scheme to defraud Jupiter's creditors through the sale of Jupitor's assets to 61875 Corporation.  The count prayed damages in an amount in excess of $1,970,000 plus punitive damages, prejudgment interest, and attorneys' fees.  Glaringly absent from the count is any allegation of the specific damages that Schwendener alleges that it suffered as a proximate result of Knopfler's breach of fiduciary duty.      

 When initially presented, the trial court denied Knopfler's motion for summary judgment on count VI.  However, upon reconsideration, the trial court reversed its prior ruling and granted the motion, finding that there was no evidence that Knopfler played a role in Jupiter's decision to cease working on the BEQ and library projects and that, as the assignee, Knopfler's acceptance of the assignment agreement on the condition that he agree to participate in the arrangement to transfer Jupiter's assets did not, as a matter of law, constitute a breach of his fiduciary duty.

Summary judgment is a drastic means of disposing of litigation and should be employed only when the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmovant, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 1998); 
Happel v. Wal-Mart Stores, Inc.
, 199 Ill. 2d 179, 186, 766 N.E.2d 1118 (2002).  Our review of a circuit court's order granting summary judgment is 
de novo
.  
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 102, 607 N.E.2d 1204 (1992). 

In order to succeed on a claim for breach of fiduciary duty, a plaintiff must establish the existence of a fiduciary duty, a breach of that duty, and damages proximately resulting from the breach.  
Neade v. Portes
, 193 Ill. 2d 433, 444, 739 N.E.2d 496 (2000).  The parties in this case do not dispute that Knopfler owed a fiduciary duty to all of Jupiter's creditors.  Rather, the relevant question is whether Knopfler, as the party moving for summary judgment, established, as a matter of law, either that he did not breach his fiduciary duty to Schwendener or that Schwendener did not suffer any damages as a result of the breach. 

We first address the trial court's conclusion that there was no evidence of a breach of fiduciary duty premised on Knopfler's involvement in Jupiter's decision to cease working on the BEQ and library projects.  Schwendener argues that the court's finding "displayed an exceedingly cramped view of Knopfler's role and misapprehended the significance of the fact that Knopfler accepted the assignment on the condition that he go along with the pre-packaged deal".  In support of its argument in this regard, Schwendener relies on Knopfler's deposition testimony wherein he acknowledged being present at a meeting with several of the defendants' attorneys during which the mechanics of the impending assignment and purchase agreements were discussed.  The deposition was taken during the time that Knopfler's motion to reconsider was pending and undetermined.  Schwendener admits that only portions of Knopfler's deposition testimony were presented to the trial court when the hearing on the motion to reconsider resumed on July 6, 2004.  Unfortunately, a transcript of the hearing on that motion is not included in the record before us and, therefore, we have no way of knowing which portions of Knopfler's deposition were presented to the court at the time it rendered its decision.  Schwendener subsequently filed a motion to supplement the record on appeal with the entire transcript of Knopfler's deposition, which the trial court granted on October 20, 2004, three months after summary judgment was granted in favor of Knopfler on count VI of Schwendener's fifth amended complaint.    

Evidentiary materials that were never considered by the trial court in a summary judgment proceeding will not be considered on review.  See 
Groce v. South Chicago Community Hospital
, 282 Ill. App. 3d 1004, 1009, 669 N.E.2d 596 (1996).   As the appellant, Schwendener had the burden of providing this court with a complete record, including the transcripts of the continued hearing on Knopfler's motion to reconsider and on its motion to supplement the record.  See 
Foutch v. O'Bryant
, 99 Ill. 2d 389, 391-92, 459 N.E.2d 958 (1984).  Having failed to do so, we will not consider any of Knopfler's deposition testimony in determining whether the circuit court erred in concluding that there was no evidence of Knopfler's participation in Jupiter's decision to cease working on the BEQ and library projects as we have no means of determining which portions of the deposition were considered by the trial court.   

Schwendener alleged in its fifth amended complaint that "[the] [d]efendants determined that [the BEQ and library project] contracts were 'unprofitable' and that it was not in their collective best interest for Jupiter to honor them."  It further alleged that Knopfler accepted the assignment agreement with knowledge of the entire scheme to defraud certain of Jupiter's creditors.  In support of his motion for summary judgment, Knopfler never argued or submitted any evidentiary material establishing that he did not take part in or have knowledge of Jupiter's decision to stop working on the construction contracts.  As such, he never met his burden of establishing the absence of a genuine issue of fact on this issue and his entitlement to a judgment as a matter of law based thereon. 

A defendant moving for summary judgment bears the initial burden of coming forward with competent evidentiary material, which if uncontradicted, entitles him to judgment as a matter of law.  See 
Kielbasa v. St. Mary of Nazereth Hospital
, 209 Ill. App. 3d 401, 406, 568 N.E.2d 208 (1991); 
Kleiss v. Bozdech
, 349 Ill. App. 3d 336, 349, 811 N.E.2d 330 (2004). Only if the defendant satisfies his initial burden of production does the burden shift to the plaintiff to present some factual basis that would arguably entitle it to a favorable judgment.  
Kleiss
, 349 Ill. App. 3d at 350.  If the defendant fails to support his motion for summary judgment with evidentiary facts, the plaintiff may rely on its complaint to establish a genuine issue of fact.  
Kielbasa
, 209 Ill. App. 3d at 406.  

 The question presented to the trial court in the summary judgment proceeding was not whether Schwendener produced any evidence that Knopfler played a role in Jupiter's decision to cease working on the BEQ and library projects; rather, the initial question is whether Knopfler produced any evidence that he did not participate in the decision.  Because Knopfler failed to provide any evidence establishing that he did not participate in Jupiter's decision to stop working on the Schwendener contracts, the burden never shifted to Schwendener to present evidence establishing that Knopfler did participate in that decision.  Consequently, we find that the trial court erred in granting summary judgment on the basis that Knopfler was not involved in Jupiter's decision to cease working on the BEQ and library projects.  

We next consider the question of whether summary judgment was proper on the theory advanced by Knopfler in his motion; namely, 
that Schwendener could not prove that he breached his fiduciary duty because there was no evidence showing that he failed to receive the fair market value for Jupiter's assets in the sale to  61875 Corporation.  In support of his motion, Knopfler attached, 
inter alia
, the affidavit of his attorney, Bruce L. Wald, to which was appended a letter dated December 20, 1996, addressed to Wald by Fred C. Caruso, a consultant employed by Development Specialists, Inc. (DSI).  In the letter, Caruso stated that, in 1996, Jupiter was experiencing financial difficulties and retained DSI to develop a financial workout plan.  Caruso determined that Jupiter had $3,788,500 in liabilities, $3,738,500 consisting of "bank debt" and $50,000 made up of wage and benefit claims relating to the residential and technical services portion of Jupiter's business.  He also determined that Jupiter's assets were worth $2,484,432, of which $1,304,068 constituted goodwill for the corporation.  Based on an analysis of Jupiter's assets and liabilities, Caruso opined that the contemplated purchase price of $3,788,500 represented "a fair value for the assets being acquired", and that Jupiter would not receive a higher offer for its assets.  In response to Knopfler's motion, Schwendener argued, 
inter alia
, that Caruso's unsworn and unverified letter should be stricken from Wald's affidavit pursuant to Supreme Court Rule 191(a) (145 Ill. 2d R. 191(a)) because the statements contained therein constituted hearsay.  Schwendener also filed a separate motion to strike Caruso's letter from Wald's affidavit.  After initially denying Knopfler's motion for summary judgment, the trial court denied Schwendener's motion to strike as moot, and there is no indication in the record that the trial court ever revisited this issue when it reconsidered its initial ruling and granted a summary judgment in favor of Knopfler.       

Supreme Court Rule 191(a) (145 Ill. 2d R. 191(a)) governs affidavits offered in support of and in opposition to summary judgment motions and states, in pertinent part, that such affidavits "shall be made on the personal knowledge of the affiants; *** shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." 
 In this case, Caruso's unsworn and unverified letter constitutes inadmissable hearsay and cannot be relied upon in support of Knopfler's motion for summary judgment.  See 
Radtke v. Murphy
, 312 Ill. App. 3d 657, 663-64, 728 N.E.2d 715 (2000).  The fact that Caruso's letter was attached to Wald's affidavit does not cure this defect, as the affidavit does not disclose that Wald had personal knowledge of the statements contained in Caruso's letter or that Wald was able to testify competently to the facts set forth therein.  See 145 Ill. 2d R. 191(a).  

On reconsideration, Knopfler argued that, even without Caruso's letter establishing the value of Jupiter's assets, there was evidence that Jupiter's secured lenders, who had every incentive to maximize their recovery from the sale of Jupiter's assets, found the sale price to be "sufficient *** notwithstanding that the banks still had to write off a [
sic
] more than a million dollars of the loan to Jupiter."  In support of his argument in this regard, Knopfler relied on the deposition testimony of Kathleen T. Hardy, an employee of American.  Hardy testified that American incurred a "shortfall" in excess of $1 million with respect to the original loan it made to Jupiter.  However, Hardy was never qualified as an expert in the valuation of Jupiter's assets and we do not believe that her testimony suggesting that American found the price paid for Jupiter's assets to be "sufficient" establishes the value of those assets.  

Having concluded that Hardy's deposition testimony is insufficient to establish the value of Jupiter's assets and that Caruso's letter is inadmissable hearsay, we conclude that Knopfler failed to provide any competent evidence as to the fair market value of Jupiter's assets and, as a consequence, did not meet his burden of showing that he received a commercially reasonable amount for their purchase.  Having failed in this regard, Knopfler did not satisfy his initial burden of establishing the absence of a genuine issue of fact on the question of whether he breached his fiduciary duty to Jupiter's unsecured creditors, including Schwendener, by participating in the sale of Jupiter's assets to 61875 Corporation.

 Knopfler contends on appeal that, even assuming 
arguendo
 that he breached his fiduciary duty, summary judgment in his favor was still appropriate as Schwendener cannot prove the damage element of its claim.  Our analysis of this contention has been made somewhat difficult in light of the fact that, as noted earlier, count VI of Schwendener's fifth amended complaint lacks any specific factual allegation supporting the prayer for damages.  From a reading of this count of the complaint, one is left to wonder exactly what damages Schwendener claims as a proximate result of Knopfler's alleged breach of his fiduciary duty.  This pleading deficiency should have been addressed by means of a section 2-615 motion or by the trial court pursuant to section 2-612(a) of the Code (735 ILCS 5/2-612(a) (West 1998)).  It is only when a legally sufficient cause of action has been stated should the trial court ever entertain a motion for summary judgment which, by its very nature,  almost necessarily assumes that a good and sufficient claim has been pled.  
Janes v. First Federal Savings & Loan Assn. of Berwyn
, 57 Ill. 2d 398, 406, 312 N.E.2d 605 (1974).  This pleading deficiency notwithstanding, we will address Knopfler's argument that Schwendener cannot, as a matter of law, prove the damage element of its claim.

Knopfler has identified two theoretical sources of damage to Schwendener; namely, the cost to complete the electrical work left to be done on the BEQ and library projects as a result of Jupiter's failure to perform under its contracts; and the sale of Jupiter's assets to the 61875 Corporation for less than their fair market value.  For its part, Schwendener asserts in its reply brief that it was damaged as a result of having to hire other contractors to complete the electrical work that should have been performed by Jupiter.  Schwendener seems to disclaim any damages as a result of the sale of Jupiter's assets for less than their fair value.  In its reply brief, Schwendener states that, although it "has not produced evidence that the assets could be sold for an amount higher than Knopfler obtained, *** that amount was never the basis of *** [its] damage claim."  Additionally, Schwendener's attorney advised the trial court during argument that Schwendener was not seeking damages because it did not "get a fair piece of the pie out of a legitimate sale", but rather on the theory that damages were incurred as a result of the costs associated with rebidding and securing an electrical contractor to finish the BEQ and library projects.  However, on whichever theory Schwendener seeks damages, we believe that summary judgment is inappropriate. 

We have already concluded that Knopfler did not meet his burden of showing that he received a commercially reasonable price for Jupiter's assets.  Consequently, the burden never shifted to Schwendener to introduce evidence that he should have received an amount sufficient to repay both Jupiter's secured and unsecured creditors.   The issue we are left with is whether we can say, as a matter of law, that Knopfler's alleged breach of fiduciary duty did not proximately result in the damages sustained by Schwendener as a consequence of Jupiter's breach of the BEQ and library projects.  

Knopfler's fiduciary duty arises from his status as the assignee of Jupiter's assets for the benefit of its creditors.  He assumed that role on December 23, 1996.  It follows then that Jupiter's repudiation of the BEQ contract on November 27, 1996, could not have been the proximate result of a breach of duty which did not arise until 26 days later.  That same reasoning, however, does not apply to Jupiter's repudiation of its contract for work on the library project.  Jupiter "walked off" of the library project on December 23, 1996, the same day that Knopfler became the assignee of its assets, and, as noted earlier, Knopfler failed to provide any evidence establishing that he did not participate in Jupiter's decision to stop working on the project.

 In summary, we conclude that, because Knopfler failed to meet his burden of establishing his right to judgment as a matter of law on count VI of Schwendener's fifth amended complaint, the trial court erred in granting summary judgment thereon.  

Schwendener next appeals from that portion of the circuit court's December 19, 2003, order denying its motion for leave to file counts X, XI, XIII, and XVI of its fifth amended complaint.  Counts X and XI, directed against American and FBS, were actions for tortious interference with the BEQ and library project contracts, count XIII was an action for civil conspiracy directed against Gibson, Nassib, Knopfler, American, and FBS, and count XVI was an action for "alter ego" asserted against American.  On July 14, 2004, the trial court made a Rule 304(a) finding as to the portion of its December 19, 2003, order denying Schwendener leave to file counts X, XI, XIII, and XVI of its fifth amended complaint.  Although Schwendener addresses its arguments to the propriety of the circuit court's decision to deny leave to file these amended counts, we must first consider our jurisdiction to review the trial court's December 19, 2003, order.

Ordinarily, an order denying leave to file an amended complaint does not constitute a final judgment  notwithstanding a court's Rule 304(a) finding.  
Enblom v. Milwaukee Golf Development
, 227 Ill. App. 3d 623, 628, 592 N.E.2d 190 (1992); 
Cinch Manufacturing Co. v. Rosewell
, 255 Ill. App. 3d 37, 42, 627 N.E.2d 276 (1993); 
Gray v. Starkey
, 41 Ill. App. 3d 555, 558, 353 N.E.2d 703 (1976).  If, however, we find that we have jurisdiction over the trial court's underlying order dismissing the counts which were sought to be amended, we may review the order denying leave to file an amended complaint with respect to those counts.  See 
Enblom
, 227 Ill. App. 3d at 628.

On March 13, 2000, the trial court dismissed counts X, XI, and XIII, of Schwendener's third amended complaint with prejudice and struck count XVI without prejudice and with leave to amend.  With respect to count XVI, we find that we lack jurisdiction to review that portion of the March 13, 2000, order dismissing the count, as an order striking a count from a complaint without prejudice is not deemed final.  See 
Branch v. European Autohaus, Ltd.
, 97 Ill. App. 3d 949, 952, 424 N.E.2d 6 (1981).  As to counts X, XI, and XIII, although the dismissal of these counts constituted a final order, the court did not enter the requisite Rule 304(a) finding making the dismissal of the counts appealable.  Rather, the trial court's Rule 304(a) finding of July 14, 2004, was limited to the portion of its March 13, 2000, order dismissing counts XIV, XV, and XVII of Schwendner's third amended complaint.  Because we lack jurisdiction to review the portions of the court's March 13, 2000, order dismissing counts X, XI, XIII, and XVI, it follows that we also lack jurisdiction to review the December 19, 2003, order denying Schwendener leave to amend these counts.  As a consequence, we dismiss Schwendener's appeal from that portion of the December 19, 2003, order.    

For the foregoing reasons, we:  dismiss Schwendener's appeal from the orders of February 23, 2001, and December 19, 2003, for want of jurisdiction; affirm the circuit court's dismissal of count XI of Schwendener's first amended complaint; reverse the dismissal of counts XV and XVII of Schwendener's third amended complaint and the summary judgment granted in favor of Knopfler on count VI of Schwendener's fifth amended complaint; and remand this cause for further proceedings consistent with the opinions expressed herein.

Appeal dismissed in part; affirmed in part, reversed in part and remanded.

KARNEZIS, P.J., and SOUTH, J., concur.