In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-1882

IN RE:

JAY BERMAN,

*Debtor.*

FOLLETT HIGHER EDUCATION GROUP, INC.,
an Illinois corporation,

*Plaintiff-Appellant,*

*v.*

JAY BERMAN,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:09-cv-03377—**Robert M. Dow, Jr.**, *Judge.*

ARGUED OCTOBER 22, 2010—DECIDED JANUARY 21, 2011

Before KANNE, TINDER, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* The bankruptcy court held
that a creditor failed to prove that a debt owed to it was

non-dischargeable under 11 U.S.C. § 523(a)(4), which provides that a debt will not be discharged in bankruptcy where that debtor has committed "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Concluding that the creditor had not established that the debtor acted in any fiduciary capacity toward the creditor, the court entered judgment for the debtor. The district court affirmed the finding that the debt was dischargeable, as do we. We agree with our colleagues on the bankruptcy court and district court that the creditor failed to show that the debtor owed the creditor a fiduciary duty.

I. *The Facts*

Plaintiff-creditor Follett Higher Education Group, Inc., an Illinois corporation, manages more than 750 college bookstores nationwide. In March 2004, Follett hired Berman & Associates, Inc., an advertising brokerage firm also located in Illinois, to place advertisements on Follett's behalf. Under the terms of their contract, Follett paid Berman & Associates 110 percent of the cost of advertisements that Berman & Associates placed with media outlets around the country. Berman & Associates then disbursed payments for the advertisements to newspapers, radio stations, and billboard operators and retained the extra ten percent as the fee for its services. The two corporations renewed this arrangement yearly until Follett learned in the summer of 2006 that Berman & Associates had not paid several outstanding advertising bills. Follett was forced to pay some media

outlets directly without recovering the sums intended for them that it had already given to Berman & Associates for that purpose.[1]

On August 23, 2006, defendant-debtor Jay Berman, who served as president, a director, and sole shareholder of Berman & Associates, petitioned for Chapter 7 bankruptcy. In his petition, Berman listed debts incurred by Berman & Associates, including the debt owed to Follett, on his schedules of outstanding debts. Follett then filed an adversary action in Berman's bankruptcy proceedings claiming that Berman had breached a fiduciary duty owed to Follett and that, as a result, the debt it was owed was non-dischargeable pursuant to 11 U.S.C. § 523(a)(4). At the conclusion of Follett's presentation of evidence at trial, Berman moved for judgment on partial findings under Federal Rule of Bankruptcy Procedure 7052.[2] The bankruptcy judge granted Berman's

---

[1] Berman & Associates ceased operations during the summer of 2006 and dissolved by the end of that year. Defendant Jay Berman and his wife abandoned or threw away any paper records of Berman & Associates and "got rid of all the computers" following the firm's dissolution. The bankruptcy court did not attribute any weight to Berman's destruction of the firm's records. We defer to the discretion of the bankruptcy judge, as trier of fact, in this regard.

[2] Rule 7052 incorporates into bankruptcy procedure Rule 52 of the Federal Rules of Civil Procedure. Berman's motion invoked section (c) of that rule: "If a party has been fully heard on an issue during a nonjury trial and the court finds
(continued...)

motion, holding that Follett had failed to prove that Berman was a fiduciary as required by the statute. The bankruptcy court's decision on the dischargeability of a debt is a final judgment for purposes of appellate jurisdiction. *In re Marchiando*, 13 F.3d 1111, 1113-14 (7th Cir. 1994). The district court affirmed the bankruptcy court's judgment and this appeal followed. We have jurisdiction to review the district court's judgment pursuant to 28 U.S.C. § 158(d).

II.  *Exceptions from Discharge Under Section 523(a)(4)*

Under section 727 of the Bankruptcy Code, and subject to certain conditions to be fulfilled by the debtor, a bankruptcy court ordinarily will discharge a debtor's debts, releasing the debtor from liability for those debts. See 11 U.S.C. § 727. There are, however, some exceptions. Section 523(a) of the Code excludes certain debts from discharge, often, but not always, where the debt results from some sort of intentional wrongdoing by the debtor. Courts construe these exceptions narrowly, in favor of the debtor, bearing in mind the goal of bankruptcy law to give the debtor a fresh start. *E.g.*, *In re Crosswhite*, 148 F.3d 879, 881 (7th Cir. 1998) ("When deciding whether a particular debt falls within a § 523

---

(...continued)

against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 52(c).

exception, courts generally construe the statute strictly against the objecting creditor and liberally in favor of the debtor."). Debts will be discharged unless proven non-dischargeable by a preponderance of the evidence. See *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

Follett argues that the debt owed to it should be excepted from discharge on the basis of Berman's and Berman & Associates' alleged "defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4).[3] To establish that a debt is non-dischargeable under section 523(a)(4), a creditor must show (1) that the debtor acted as a fiduciary to the creditor at the time the debt was created, and (2) that the debt was caused by fraud or defalcation. See *In re Frain*, 230 F.3d 1014, 1019 (7th Cir. 2000); *Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir. 1987). Here, the parties dispute the first requirement:

---

[3] Black's Law Dictionary defines "defalcation" as a "failure to meet an obligation" or "a nonfraudulent default." *Black's Law Dictionary* 479 (9th ed. 2009). Defalcation can be distinguished from fraud and embezzlement on the basis that subjective, deliberate wrongdoing is not required to establish defalcation, though some degree of fault is required. See *Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510, 512 (2d Cir. 1937) (L. Hand, J.) (a fiduciary who takes money upon a conditional authority that may be revoked, and who knows that the authority may be revoked, is guilty of a "defalcation" even if the wrong falls short of fraud or embezzlement). We have held that defalcation requires something more than negligence or mistake, but less than fraud. See *Meyer v. Rigdon*, 36 F.3d 1375, 1385 (7th Cir. 1994).

whether there existed a fiduciary relationship that could render the debt to Follett non-dischargeable. The bankruptcy judge found none. Distinguishing this case from prior cases where fiduciary duties were found, Judge Goldgar determined that Berman & Associates' role as Follett's agent in purchasing advertising did not amount to a fiduciary relationship. The judge also concluded that even if the corporate parties' relationship could be considered fiduciary, Follett had not established any kind of obligation between Follett and Jay Berman, the individual debtor, nor had it shown that Berman & Associates was Berman's alter ego. Not finding any fiduciary obligation on Berman's part, the bankruptcy court entered judgment in Berman's favor.

We apply the same standard of review as the district court, examining the bankruptcy court's legal findings de novo and its findings of fact for clear error. *Ojeda v. Goldberg*, 599 F.3d 712, 716 (7th Cir. 2010); *Frain*, 230 F.3d at 1017; *Peterson v. Scott (In re Scott)*, 172 F.3d 959, 966 (7th Cir. 1999). Where the trial court correctly states the law, its determination of whether the facts met the legal standard will be disturbed only if it is clearly erroneous. See *Pinkston v. Madry*, 440 F.3d 879, 888 (7th Cir. 2006).

Unlike most claims of non-dischargeability, this case presents an added challenge for Follett because it contracted with Berman & Associates, not with Jay Berman, the individual debtor. Berman & Associates is not the debtor before us. Jay Berman is, and his debts are subject to discharge unless Follett has proven an exception. Follett offers two theories for holding that the debt is not dischargeable. Neither is persuasive.

A. *Officer of an Insolvent Corporation*

Follett argues first that Jay Berman owed a fiduciary duty to the creditors of Berman & Associates because he was an officer and director of an insolvent corporation. Under Illinois law, like the law of many states, a corporate officer or director assumes a fiduciary duty toward the corporation, its shareholders, and, upon the corporation's insolvency, also to its creditors. See, *e.g.*, *Atwater v. American Exchange National Bank of Chicago*, 38 N.E. 1017, 1022 (Ill. 1893) ("directors . . . occupy a fiduciary relation towards the creditors when the corporation becomes insolvent"); *Paul H. Schwendener, Inc. v. Jupiter Electricity Co.*, 829 N.E.2d 818, 828 (Ill. App. 2005) ("once a corporation becomes insolvent, the fiduciary duty of an officer is extended to the creditors of the corporation"); see also 5 William L. Norton, Jr., Norton Bankruptcy Law & Practice § 96:4 (3d ed. 2010) (majority view is that insolvency places corporate assets in trust for corporate creditors, and in some jurisdictions the fiduciary duty of directors shifts to include creditors).

Follett argues that this duty under state law amounts to a fiduciary duty for purposes of federal bankruptcy law under section 523(a)(4). Accepting this argument, in the absence of proof of fraud, would go a long way toward imposing non-dischargeable personal liability on corporate officers and directors for general corporate debts of faltering corporations.

This theory has divided bankruptcy and district courts. Adopting the theory, for example, see *Salem Services, Inc. v. Hussain (In re Hussain)*, 308 B.R. 861, 867-68

(Bankr. N.D. Ill. 2004) (accepting theory but finding no defalcation); *Energy Products Engineering, Inc. v. Reuscher (In re Reuscher)*, 169 B.R. 398, 402-03 (S.D. Ill. 1994) (accepting theory and reversing bankruptcy court's dismissal of complaint); see also *Berres v. Bruning (In re Bruning)*, 143 B.R. 253, 256 (D. Colo. 1992) (holding that a fiduciary obligation arises upon insolvency and falls within section 523(a)(4)'s ambit). Other courts have adopted a more limited view, recognizing that the Supreme Court has construed the scope of a fiduciary relationship under section 523(a)(4) more narrowly than state law does for other purposes. See, *e.g.*, *Murphy & Robinson Investment Co. v. Cross (In re Cross)*, 666 F.2d 873, 880-81 (5th Cir. Unit B 1982) (concluding that an officer did not owe the corporation's creditor any fiduciary duty within the meaning of section 523(a)(4)); *Economic Development Growth Enterprises Corp. v. McDermott (In re McDermott)*, 434 B.R. 271, 281 (Bankr. N.D.N.Y. 2010), *appeal docketed*, No. 6:10-CV-0696 (N.D.N.Y. June 17, 2010) (determining that fiduciary obligations of officers of insolvent corporations are insufficient for the purposes of section 523(a)(4)); *First Options of Chicago, Inc. v. Kaplan (In re Kaplan)*, 162 B.R. 684, 704-06 (Bankr. E.D. Pa. 1993) (rejecting the premise that an officer's debt would be non-dischargeable as a result of the corporation's wrongdoing, despite state law making the officer a fiduciary).

In this case, the bankruptcy court found that Follett had not proved that Berman & Associates was insolvent, so the court did not reach the question whether Berman, as a director and officer, had a fiduciary duty to

creditors, let alone whether any such fiduciary duty qualified Berman's debt as non-dischargeable under section 523(a)(4). Bearing in mind Berman's controlling role in the corporation, his own personal bankruptcy, the end of the corporation's business in 2006, and the corporation's inability to pay what it owed to Follett, we believe the better approach is to address Follett's argument on the merits, which can be decided as a matter of law. We hold that even if the evidence showed that Berman & Associates was insolvent when all or some part of the debt arose, so that Berman would have had a fiduciary duty toward creditors under Illinois law, this state law duty would not have constituted a basis for non-dischargeability of the debt owed to Follett under section 523(a)(4).

Not all persons treated as fiduciaries under state law are considered to "act in a fiduciary capacity" for purposes of federal bankruptcy law. The existence of a fiduciary relationship under section 523(a)(4) is a matter of federal law. *Frain*, 230 F.3d at 1017. As we observed in *In re McGee*, bankruptcy law "depends on, and implements, entitlements defined by state law, but which of these entitlements is subject to discharge or a trustee's avoiding power is beyond state control." 353 F.3d 537, 540 (7th Cir. 2003) (citations omitted). It is not sufficient to show merely that a debtor was a fiduciary under applicable state law. Although an officer or director of an insolvent corporation may be deemed a fiduciary for creditors under state law, the officer or director may not be deemed, on that basis alone, a fiduciary under 11 U.S.C. § 523(a)(4).

The Supreme Court taught in *Davis v. Aetna Acceptance Co.*, 293 U.S. 328 (1934), that the non-dischargeability exception's reference to fiduciary capacity was "strict and narrow." 293 U.S. at 333. As Justice Cardozo wrote for the Court, the debtor "must have been a trustee before the wrong and without reference thereto." *Id.*[4] Those facts are not present in a situation such as this, where the corporation's breach of its contract created the debt. The resulting obligation to the creditor is not "turned into" one arising from a trust. *Id.* at 334. Such obligations are "remote from the conventional trust or fiduciary setting, in which someone . . . in whom confidence is reposed is entrusted with another person's money for safekeeping." See *Marchiando*, 13 F.3d at 1116. At least in the absence of fraud, we decline to stretch the section 523(a)(4) exception so far as to make officers and directors of insolvent corporations personally liable, without the ability to secure discharge in bankruptcy, for a wide range of corporate debts.

### B.	*Express Trust or Implied Fiduciary Status*

Under its second theory, Follett urges us to hold that Berman & Associates owed it a fiduciary duty and then

---

[4] The *Davis* Court was interpreting a predecessor statute that stated in relevant part: "A discharge in bankruptcy shall release a bankrupt from all his provable debts, except such as . . . were created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity." Bankruptcy Act of 1898, § 17, 30 Stat. 544, 550, formerly codified at 11 U.S.C. § 35 (repealed 1978).

to pierce the corporate veil to hold Jay Berman personally responsible for the debt of Berman & Associates. We agree with the bankruptcy and district courts that Follett failed to prove that the corporation owed it a fiduciary duty, so we do not reach the veil-piercing issue.

Long before its discussion in *Davis v. Aetna Acceptance Co.*, the Supreme Court addressed the scope of the non-dischargeable debt exception in *Chapman v. Forsyth*, 43 U.S. (2 How.) 202 (1844). There, the Court held that a cotton "factor" tasked with selling 150 bales of cotton on behalf of his principal did not fall within the statutory exception.[5] The Court cautioned about the implications of a broad interpretation—one that risked swallowing the rule of dischargeability—and concluded that the exception was intended to be limited: "In almost all the commercial transactions of the country, confidence is reposed in the punctuality and integrity of the debtor, and a violation of these is, in a commercial sense, a disregard of a trust. But this is not the relation spoken of in . . . the act." 43 U.S. at 207. The Court reiterated its limited interpretation, and the consistency of its application, in *Davis*. See 293 U.S. at 333.

---

[5] As in *Davis*, the Court was interpreting an earlier version of the exception, which stated in relevant part that "all persons whatsoever, residing in any state, territory or district of the United States owing debts which shall not have been created in consequence of a defalcation as a public officer, or as executor, administrator, guardian, or trustee, or while acting in any other fiduciary capacity shall . . . be entitled to a discharge." *Forsyth*, 43 U.S. at 206 (internal quotation marks omitted).

Our application of the Court's guiding principle is no different. We have recognized that the exception encompasses only "a subset" of fiduciary obligations. *In re Woldman*, 92 F.3d 546, 547 (7th Cir. 1996). At the time of *Davis*, the subset was limited to express trusts, and did not include trusts implied by law. See 293 U.S. at 333. Since then, however, courts have expanded the application of section 523(a)(4) beyond express trusts to certain relationships where the law imposes fiduciary obligations, such as the obligation an attorney owes to a client or a director owes to shareholders. See *Marchiando*, 11 F.3d at 1115; see also *LSP Investment Partnership v. Bennett (In re Bennett)*, 989 F.2d 779, 784-85 (5th Cir. 1993) (holding that the "technical" or "express" trust requirement is no longer "limited to trusts that arise by virtue of a formal trust agreement, but includes relationships in which trust-type obligations are imposed pursuant to statute or common law"). Thus, our threshold inquiry is whether Berman & Associates owed Follett a fiduciary obligation through the presence of either an express trust or an implied fiduciary status arising from their contractual relationship.

### 1.   *No Express Trust*

Follett maintains that it has shown sufficient evidence to demonstrate the existence of an express trust settled by Follett, with itself as the beneficiary and Berman & Associates as the trustee, over the years of their contractual relationship. We disagree. In *McGee*, we described the hallmarks of a trust to include "[s]egregation

of funds, management by financial intermediaries, and recognition that the entity in control of the assets has at most 'bare' legal title to them." 353 F.3d at 540-41. These hallmarks, as well as a demonstration of clear intent to create a trust, can distinguish a trust relationship from an ordinary contractual relationship. See Robert E. Ginsberg, Robert D. Martin & Susan V. Kelley, Ginsberg & Martin on Bankruptcy § 11.06 at 11-112 (5th ed. 2010) (collecting cases). Implied trusts lacking these hallmarks, such as constructive or resulting trusts imposed on transactions as a matter of equity, do not fall within the statutory exception. See *Marchiando*, 13 F.3d at 1115-16. Unlike express trust arrangements, fiduciary duties arising under constructive or resulting trusts are found to be implied by courts only as a result of existing debts. For a section 523(a)(4) exception to apply, the fiduciary duties must exist *prior* to the debt. See *id.*; *Carlisle Cashway, Inc. v. Johnson (In re Johnson)*, 691 F.2d 249, 251-52 (6th Cir. 1982) (noting that the term "fiduciary" in the non-dischargeable debt exception does not extend to implied trusts).

The contracts between Berman & Associates and Follett stated that Berman & Associates would provide Follett with bill-paying services. Nothing in those contracts reflected an intent to create an express trust. Nothing in the record suggests that Berman & Associates maintained any separate fiduciary account or that the contracts required segregation of funds on Follett's behalf. We agree with the bankruptcy and district courts that Follett did not prove the existence of an express trust.

### 2. *No Implied Fiduciary Status*

In the absence of an express trust, Follett faces an uphill battle to prove a fiduciary relationship. Follett points to our holdings in *Marchiando* and *McGee* to argue that the nature of the three-year relationship between the two corporations was sufficient to imply fiduciary duties within the meaning of the statute. Follett misreads those cases, which provide useful guidance on the implied fiduciary theory.

In *Marchiando*, the owner of a convenience store declared bankruptcy after failing to remit the proceeds of state lottery ticket sales. 13 F.3d at 1113. An Illinois state statute provided that lottery ticket proceeds "shall constitute a trust fund" until paid to the state. 20 ILCS § 1605/10.3. We acknowledged that a fiduciary relationship may arise separately from an express trust, but we held that the state statute alone did not create a fiduciary obligation within the meaning of section 523(a)(4). Non-dischargeability requires more. We explained that the non-dischargeability standard could be met where a fiduciary relationship involved a difference in knowledge or power giving one party a position of ascendancy over another. 13 F.3d at 1116. Though the relationship in that case did not meet the standard, we described how the law, and the non-dischargeability exception in particular, separates relationships "in which one party to the relation is incapable of monitoring the other's performance" from relationships between equals. *Id.*

In *McGee*, a city ordinance created a fiduciary obligation on the part of a landlord to hold all security deposits

separate from other funds. 353 F.3d at 540. In that case, again, the ordinance's label of the landlord's obligation as "fiduciary" did not qualify the parties' relationship as falling within the section 523(a)(4) exception. But its requirement that the deposit be segregated, as well as the disparity in power governing those funds, led us to conclude that the "economic relation" created by the ordinance imposed fiduciary obligations within the meaning of section 523(a)(4). *Id.* at 541.[6]

This analysis applies beyond cases like *Marchiando* and *McGee,* where a statute or ordinance forms the basis of a fiduciary obligation, to those more closely resembling this case, where a contract is necessary to establish a fiduciary relationship. Justice Cardozo wrote for the *Davis* Court that it is the substance of a transaction, rather than the label assigned to it, that determines whether there is a fiduciary relationship for bankruptcy purposes. 293 U.S. at 334. Thus, in such cases, we have held that the obligations of the contract, like the legislative labels in *Marchiando* and *McGee*, do not alone establish a fiduciary relationship within the meaning

---

[6] Follett argues on appeal that the bankruptcy court "disregarded" *McGee* and that, had it known the court would take that approach, it would have argued its claim under an embezzlement theory (which would not have required proof of fiduciary capacity) in the alternative. We think the bankruptcy court's interpretation of our prior case law was correct. And Follett had every opportunity to argue its claim under whatever theory or theories it liked. It was not entitled to try one theory, lose with it, and then start over.

of section 523(a)(4). See *Frain*, 230 F.3d at 1017; *Woldman*, 92 F.3d at 547.

We addressed this issue in *Frain*, in which shareholders of a closely held corporation sought to except from discharge a debt owed to them by the corporation's major shareholder on the ground that he had violated provisions of a shareholder agreement. We acknowledged that Frain, the debtor and the corporation's chief operating officer, had a "natural advantage" over the other two shareholders because of his knowledge of the corporation's finances. That fact alone was not enough to meet the high standard of section 523(a)(4), but Frain also maintained "ultimate power" over both his own employment and the direction of the corporation. *Id.* at 1017-18. His "control over the day-to-day business of the corporation and ownership of 50% of the shares gave him significant freedom to run the corporation as he saw fit." *Id.* at 1018. This substantial concentration of power under the corporation's internal structure created a fiduciary duty that fell within the meaning of section 523(a)(4).

Our analysis in *Woldman* was similar, though the outcome differed. There, two lawyers agreed to share equally any attorney fees generated by a personal injury case that one lawyer had referred to the other. 92 F.3d at 546. Although under Illinois law, partners or joint venturers owe each other a fiduciary obligation, we did not extend the section 523(a)(4) exception so far. *Id.* at 546-47. We observed that, as here, the debtor's only duty was to honor the agreement. There was no

substantial inequality in power or knowledge between the parties to distinguish them as anything other than equal partners. Their relationship fell "at the opposite end of the broad spectrum of fiduciary obligations" from cases within the meaning of the section 523(a)(4) exception, such as those involving a trustee and child beneficiary or a lawyer and client. *Id.* at 547.

Here, the bankruptcy judge correctly concluded that an ordinary principal-agent or buyer-seller relationship, without more, is not a fiduciary relationship under section 523(a)(4). Nothing in the substance of the relationship between Follett and Berman & Associates qualified it as a fiduciary relationship within the meaning of section 523(a)(4). Their creditor-debtor relation did not involve any "special confidence[s]" like those present in other types of relationships that we and other courts have recognized to fit within the exception on a case-by-case basis. *Marchiando*, 13 F.3d at 1116. See, *e.g.*, *Johns v. Johns (In re Johns)*, 181 B.R. 965, 970-73 (Bankr. D. Ariz. 1995) (parent, a trustee of funds for the benefit of his son, was a fiduciary for purposes of non-dischargeability); *Griffiths v. Peterson (In re Peterson)*, 96 B.R. 314, 321-24 (Bankr. D. Colo. 1988) (investment advisor with statutory duties qualified as fiduciary within the meaning of section 523(a)(4)); *Purcell v. Janikowski (In re Janikowski)*, 60 B.R. 784, 789 (Bankr. N.D. Ill. 1986) (fiduciary relationship created between an attorney and client under Illinois law fell within section 523(a)(4) exception); *Eau Claire County v. Loken (In re Loken)*, 32 B.R. 205, 210-11 (Bankr. W.D. Wis. 1983) (public register of deeds and

fee collector served in fiduciary capacity for purposes of section 523(a)(4)).

A commercial principal like Follett, or like the cotton principal long ago in *Forsyth*, who seeks the protection of a trust in the event of bankruptcy can create an express trust by putting clear requirements to that effect in its contracts, such as requiring segregation of funds held in trust for it. Otherwise, as the Supreme Court observed, if the non-dischargeable debt exception were to include such ordinary relationships as this one, it would be difficult to limit its application at all. *Forsyth*, 43 U.S. at 207.

III. *Conclusion*

Follett did not establish that Berman & Associates acted in a fiduciary capacity, under any theory, within the meaning of 11 U.S.C. § 523(a)(4). We therefore affirm the bankruptcy court's decision holding the debt to Follett to be dischargeable.

AFFIRMED.